UNITED STATES of America, Appellee,

v.

Charles Steven ANTONICK, Appellant.

No. 71-2574.

United States Court of Appeals, Ninth Circuit.

June 1, 1973.

As Modified on Denial of Rehearing and Rehearing En Banc

July 13, 1973.

Clay G. Diamos (argued), of O'Dowd, Fahringer & Diamos, Tucson, Ariz., for appellant.

Ann Bowen, Asst. U. S. Atty. (argued), Richard K. Burke, U. S. Atty., Tucson, Ariz., for appellee.

Before BARNES and WALLACE, Circuit Judges, and BYRNE,* District Judge.

OPINION

BARNES, Circuit Judge:

Appellant Antonick was convicted by a jury on Counts III and IV of a four count indictment; and found not guilty on Counts I and II. Count III was a substantive count, alleging that appellant and one Joyce Battaglia on June 24, 1970, used extortionate means (i. e., threats of violence) to collect, or attempt to collect, $5,000 from one Donald Lee Brost, loaned by the co-defendant Battaglia to Brost on May 1, 1969, in violation of 18 U.S.C. §§ 894[1] and 2.[2]

Count IV was a substantive count alleging that appellant and co-defendant Battaglia on June 30, 1970, had caused the use of interstate facilities—(i. e., a Western Union Money Order telegram from Michigan to Arizona), to facilitate the carrying on of an unlawful activity

* Honorable William M. Byrne, Senior United States District Judge, Central District of California, sitting by designation.

1. "§ 894. Collection of extensions of credit by extortionate means.

"(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

"(1) to collect or attempt to collect any extension of credit, or

"(2) to punish any person for the nonrepayment thereof, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both.

"(b) In any prosecution under this section, for the purpose of showing an implicit threat as a means of collection, evidence may be introduced tending to show that one or more extensions of credit by the creditor were, to the knowledge of the person against whom the implicit threat was alleged to have been made, collected or attempted to be collected by extortionate means or that the nonrepayment thereof was punished by extortionate means.

"(c) In any prosecution under this section, if evidence has been introduced tending to show the existence, at the time extension of credit in question was made, of the circumstances described in section 892(b)(1) or the circumstances described in section 892(b)(2), and direct evidence of the actual belief of the debtor as to the creditor's collection practices is not available, then for the purpose of showing that words or other means of communication, shown to have been employed as a means of collection, in fact carried an express or implicit threat, the court may in its discretion allow evidence to be introduced tending to show the reputation of the defendant in any community of which the person against whom the alleged threat was made was a member at the time of the collection or attempt at collection."

2. "§ 2. Principals.

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

(i. e., extortion from Donald Lee Brost) in violation of Arizona law (Sec. 13–401 Arizona Revised Statutes) in violation of 18 U.S.C. §§ 1952 [3] and 2.

Count II was a substantive count, but based on other acts; Count I was an alleged conspiracy covering all substantive acts of extortion alleged in Counts II, III, and IV.

Appellant raises three issues:

I

*First*: May the United States report and transcribe the Grand Jury testimony of some but not all of the witnesses testifying before it, and subsequently called to testify at trial? We answer that question affirmatively.

The appellant's position is that while the government need not transcribe all the testimony given before a grand jury, if it transcribes some it must transcribe all; and that in this case failure to transcribe was prejudicial to appellant.

We have previously, and do again, reject appellant's argument. United States v. Parker, 428 F.2d 488, 489–490 (9th Cir. 1970). Rule 6(d) Fed.R.Cr. Proc. provides that a stenographer or an operator of a recording device "may" be present during grand jury proceedings, but no portion of that rule requires a stenographer or an operator of a recording device to be present. Rule 16(a)(3) permits discovery, not of grand jury testimony, but only of *"recorded testimony of the defendant before a grand jury."* (Emphasis added.) No portion of the Rules "requires provision of a transcript" of the testimony of witnesses before a grand jury. "The Rules simply do not so provide." Ingle v. United States, 399 F.2d 690 (9th Cir. 1968).

In Loux v. United States, 389 F.2d 911 (9th Cir. 1968), cert. denied, 393 U. S. 867, 89 S.Ct. 151, 21 L.Ed.2d 135 (1968), we held that the failure to record raised no constitutional problems.

We hold "[T]here is no requirement that grand jury proceedings be recorded or transcribed." (*Id.* at 524). *See also*: United States v. Thoreson, 428 F.2d 654, 665–666 (9th Cir. 1970).

We decline the invitation to overrule our previous decisions.[4]

Unlike appellant, we do not read United States v. Fishbein et al., 446 F.2d 1201 (9th Cir. 1971) to hold that even a deliberate failure to record grand jury

3. § 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises.

"(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act), or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

"(c) Investigations of violations under this section involving liquor shall be conducted under the supervision of the Secretary of the Treasury."

4. United States v. Cramer, 447 F.2d 210, 213 (2nd Cir. 1971) states that United States v. Ayers, 426 F.2d 524 (2nd Cir. 1970), cert. denied 400 U.S. 842, 91 S.Ct. 85, 27 L.Ed.2d 78 (1970), "makes it equally plain that a defendant is not entitled to a reversal of his conviction simply because testimony before the grand jury which returned an indictment against him has not been recorded. *This is the position taken by every court which has considered the problem.* Citations." (Emphasis added.)

minutes "might be" error. Nor can we agree:

(1) That the prosecution's failure to record grand jury testimony, when the government already has an investigative report available, is analogous to a prosecution knowingly suppressing evidence. Here the government was required to produce, and did produce, all evidence available to defendant under the Jencks Act rule, "including grand jury testimony that may exist." (R. T. at 11).

(2) That the majority United States Rule (that to entitle the defendant to relief the "destruction" of records must have been not in good faith) is an improper rule. *Cf.* Campbell v. United States, 373 U.S. 487, 83 S.Ct. 1356, 10 L.Ed.2d 501 (1963).

(3) That United States v. Romano, 330 F.2d 566 (2d Cir. 1964) aids appellant. "The claim that the defense, during trial, was improperly denied access to the entire written report of Agent Nadel is without any basis." All statements were made available when ". . . witnesses were called to testify." (*Romano* at 570).

## II

Appellant's second point is the insufficiency of the evidence as to Court IV.

This is based on the premise that 18 U.S.C. § 1952(a) defines as a criminal: "Whoever . . . uses any facility in interstate or foreign commerce" with intent to carry on "any unlawful activity" (such as extortion), and that this statute does not forbid one to "cause" another to "use" such facility. The trial court took the position that Section 1952(a) includes *causing the use* by another, as well as the use by the defendant himself. (4 R.T. at 768, lines 19–22). This ruling is based on the effect of 18 U.S.C. § 2(b), which provides that one who "wilfully *causes an act to be done,* which if directly performed *by him or another* would be an offense against the United States, is punishable as a principal." (Emphasis added.)

The district court ruled the telegram was "caused by the fear that was stricken (by the defendant) into Brost, who was going to pay it (the debt) off, and he used interstate (sic—wires?—) for that purpose." (R.T. at 769.)

Appellant was the principal, not Brost, as appellant contends. 18 U.S.C. § 2 eliminates the distinction between principals and accessories before the fact. United States v. Sannicandro, 434 F.2d 321, 323 (9th Cir. 1970).

> "Criminal responsibility cannot be avoided by an actor who substitutes another instrumentality to perform some element of the criminal activity even though that instrument selected lacks the *mens rea* to commit the offense charged."

United States v. Zirpolo, 288 F.Supp. 993, 1013 (D.N.J.1968); Feldstein v. United States, 429 F.2d 1092, 1095 (9th Cir. 1970); United States v. Roselli, 432 F.2d 879, 891 (9th Cir. 1970); Rewis v. United States, 401 U.S. 808, 91 S.Ct. 1056, 28 L.Ed.2d 493 (1971).

This rule is particularly apt where the defendant charged (appellant) suggested to the actor (Brost) that the money be sent from Michigan to Arizona by wire (1 R.T. at 195).

We find no insufficiency of the evidence as to Count III.

## III

Appellant's third alleged error was the court's refusal to sever "the trial with the four counts . . . so as to permit trial with respect to the count or portions thereof with respect to Donald Lee Brost and trial with respect to the counts or portions thereof with respect to Doris Lee Patty to be had separately." (C.T. at 37). This obviously would require, if granted, a further superseding indictment.

Because appellant was found not guilty on the Count I conspiracy charge, the court is now charged with being pre-

viously in error in viewing the pleading as one involving "one conspiracy to do two things", i. e., two extortion plots. (Motion to Sever, R.T. at 6, lines 20–24).

This motion was made just before the trial of a first superseding indictment. It is a matter controlled by the exercise of the sound discretion of the trial court. This occurred. We find no abuse of discretion or error. United States v. Martinez, 429 F.2d 971, 975 (9th Cir. 1970).[5]

## IV

■ Finally, the appellant raises, at least inferentially, that the evidence was insufficient to convict under Count III. We disagree. While not without some conflict, it was clearly sufficient for the jury's verdict.

The Judgment of Conviction on Counts III and IV is affirmed as to each count.

## ORDER MODIFYING OPINION

■ Appellant asks in his Petition for Rehearing that this Court extend its holding that motions made for the recordation of grand jury testimony or for disclosure of transcripts thereof post indictment *must be granted* if there has not been a government showing of its legitimate and compelling interest not to record portions of the record.

When the trial judge *granted* the defendant's request as to grand jury minutes "to the extent the government will be required the day before any witness is to be called by the Government, to give the names of the witnesses for that day to counsel, and any Jencks Act statements, including grand jury testimony that may exist." (Minute Entry, C.R.

129 and R.T. at 11), the Court thus granted defendant all that Dennis v. United States, (1966) 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 required. We must assume that the experienced trial judge, weighing the "particularized need" submitted by defendant and the prejudice demonstrated by defendant, or the lack of it, exercised a liberal attitude toward defendant's needs, and found the circumstances insufficiently "exceptional" to deny the balance of defendant's motion made after indictment.

Here there was no refusal by the government to record grand jury testimony after demand by defendant prior to the taking of the grand jury testimony. The defendant's first request for such testimony was filed nine days after the Grand Jury had filed its indictments.

In the *Price & Coffey* case, the language 474 F.2d at 1226 is that "The Government has known at least since *Thoresen* that *a failure to record grand jury proceedings after notice that a defendant wants recordation* could jeopardize a prosecution." Here there was no request made by defendants prior to the grand jury testimony and there was no action or inaction by the government *after* any request.

We see no reason to reverse our opinion on this subject, nor to ask the district court to reconsider and again weigh the nature and extent of the defendant's claimed particularized need or prejudice. We do not consider that United States v. Price & Coffey, 474 F. 2d 1223 (1973) requires it.

We find no merit in petitioner's second point.

The Petition for Rehearing is denied and the suggestion for rehearing *en banc* is rejected.

5. This entirely apart from the fact the motion to sever was untimely filed. "Your motion to sever and any amended motion is months late." (R.T. May 24, 1971, p. 10.)