**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**John Alexander BEATHUNE and Rudy Rhodes, Defendants-Appellants.**

**Nos. 74–1677 and 74–1678.**

United States Court of Appeals, Tenth Circuit.

Argued Aug. 19, 1975.

Decided Dec. 31, 1975.

Rehearing Denied Feb. 9, 1976.

Theodore S. Halaby, Sp. Asst. U. S. Atty. (James L. Treece, U. S. Atty., and Thomas E. Henry, Asst. U. S. Atty., on the brief), for plaintiff-appellee.

E. Michael Canges, Denver, Colo. (James Rollin Miller and Canges & Shaver, Denver, Colo., on the brief), for defendant-appellant John Alexander Beathune.

Sheldon Yavitz, Miami, Fla. (Michael A. Davis, Hochstadt, Straw & Davis, Denver, Colo., on the brief), for defendant-appellant Rudy Rhodes.

Before HILL, SETH and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

Beathune and Rhodes were both convicted of conspiracy to knowingly transport and sell in interstate commerce stolen motor vehicles in violation of 18 U.S.C. §§ 2312 and 2313. Beathune was also convicted on three counts charging substantive crimes involving the knowing disposition of particular stolen vehicles and Rhodes was convicted on five such substantive counts. Both now appeal.

Beathune owned Bavarian Motors, a Denver used-car business which specialized in selling used Porsche cars. The Government's evidence showed that numerous Porsche vehicles were stolen in and around the New York area and were thereafter driven to Denver, Colorado, by different persons, including Rhodes, one of the defendants, and were then sold to Beathune, who in turn resold the vehicles to purchasers in the Denver area. One Schmidt, a named defendant in the present case, pleaded guilty and later testified against Beathune and Rhodes. He admitted that he had sold stolen Porsches to Beathune, and his testimony quite definitely incriminated Rhodes in the interstate stolen car operation. One Galligan, who was a named defendant in a separate indictment growing out of this operation, also pleaded guilty and testified as a Government witness. His testimony was that he, in conjunction with Schmidt, had sold cars he knew to be stolen to Beathune. He further testified that on one occasion he told Beathune pointblank that the cars had been stolen in Greater New York and transported to Colorado for sale. According to Galligan, Beathune "seemed to be aware of the situation and he didn't seem to be surprised." As indicated, Beathune and Rhodes were convicted by a jury and each now appeals his conviction.

Beathune raises two points on appeal: (1) The trial court erred in denying his motion for a separate trial; and (2) his Fifth and Sixth Amendment rights to due process and effective assistance of counsel were abridged by the fact that the Government failed to preserve the testimony given the Grand Jury by one of its "key" witnesses, thereby depriving Beathune of what he asserts to be his right to examine such testimony prior to trial. Neither of these matters has merit.

Fed.R.Crim.P. 8(b) provides that two or more defendants may be charged in the same indictment if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. The charge in the instant indictment, as well as the Government's evidence in support of such charge, indicated that Rhodes and Beathune were acting hand-in-glove in an interstate stolen car ring, with Rhodes, as well as others, driving the stolen vehicles cross-country in interstate commerce and selling them to Beathune, who then sold the cars to purchasers in the Metropolitan Denver area. Under Fed.R.Crim.P. 14 a motion for severance is addressed to the sound discretion of the trial court, and in the instant case

we find no abuse of discretion. *United States v. Davis*, 436 F.2d 679 (10th Cir. 1971), and *United States v. Fairchild*, 435 F.2d 972 (10th Cir. 1970).

FBI agent Norton was indeed a key Government witness. At trial he testified, among other things, that he applied a so-called "acid" test to certain of the Porsches sold by Beathune and determined by such test that the vehicle identification number (VIN) on some of the vehicles had been altered. By this same test Norton also ascertained the original VINs on the Porsches in question. His testimony before the Grand Jury was not recorded, and hence could not be given defense counsel by way of pretrial discovery. It would appear that though agent Norton's testimony before the Grand Jury was not recorded, testimony of certain other witnesses was recorded, and was apparently given defense counsel by order of court. Counsel in this court attacks what he labels as the "selective" recordation of the testimony, i.e., recording the testimony of some—but not all—of the witnesses appearing before the Grand Jury. In oral argument we are advised that the Government only recorded the testimony of those appearing before the Grand Jury who conceivably might be inclined to later recant. It was apparently on this basis that agent Norton's testimony before the Grand Jury was not recorded, though the testimony of certain other witnesses was. In our view, the facts of the instant case do not show a violation of Beathune's Fifth and Sixth Amendment rights.

The rule in this Circuit is that there is no requirement that the Grand Jury proceedings be recorded for furnishing to the defense. *United States v. Addington*, 471 F.2d 560 (10th Cir. 1973); *United States v. Cooper*, 464 F.2d 648 (10th Cir. 1972), *cert. denied*, 409 U.S. 1107, 93 S.Ct. 901, 34 L.Ed.2d 688 (1972), and *United States v. Goad*, 426 F.2d 86 (10th Cir. 1970). Counsel concedes that such is the rule of the Tenth Circuit, but asserts that if the Government in a given case records some of the testimony before a Grand Jury, then it must record all of the testimony, and if it fails to record all of the testimony then the indictment must be dismissed. We reject that argument. *See United States v. Antonick*, 481 F.2d 935 (9th Cir. 1973), *cert. denied*, 414 U.S. 1010, 94 S.Ct. 374, 38 L.Ed.2d 248 (1973), where the Ninth Circuit rejected the identical argument. We subscribe to the reasoning of *Antonick*.

Rhodes raises a variety of other grounds for reversal. The indictment charges a conspiracy between the named defendants, i.e., Beathune, Rhodes and Schmidt, along with other coconspirators who were not named as defendants, the conspiracy commencing on or about January 1, 1972, and extending to on or about April 1, 1973. As indicated, the defendant Schmidt pleaded guilty and at trial testified on behalf of the Government. Schmidt was at one time the owner of Stuttgart East in New York City and as such dealt in the sale of foreign cars. Schmidt testified that he first met both Beathune and Rhodes in late 1969 or early 1970, and that he and Rhodes started selling stolen Porsches to Beathune in 1970 and that the two of them continued selling Porsches until early 1972. According to Schmidt, he and Rhodes discontinued their relationship about that time, though thereafter both he and Rhodes continued to sell Porsches to Beathune on an individual basis. Schmidt testified that he never did tell Beathune that the cars in question had been stolen, though he conceded that he himself knew they had been stolen. Schmidt's testimony, however, did incriminate Rhodes and indicated that Rhodes was fully aware that they were dealing in stolen cars.

Counsel for Rhodes objected to any testimony from Schmidt which related to any event occurring prior to January 1, 1972, the date set forth in the indictment as being the time when the conspiracy came into being. The trial court overruled this objection and permitted Schmidt to develop his relation-

ship with both Beathune and Rhodes from the date he first met each. At the same time the trial court gave the jury a cautionary instruction concerning evidence which tended to show the commission of crimes other than those charged and further instructed the jury as to the limited purpose for which this testimony was being received. We find no error in this ruling or the instruction given.

■ The general rule is that evidence of criminal activities other than the ones charged in an indictment is not admissible. However, there is an exception if the evidence establishes a course of conduct, scheme, design, or intent. *United States v. Pauldino*, 443 F.2d 1108 (10th Cir. 1971), *cert. denied*, 404 U.S. 882, 92 S.Ct. 204, 30 L.Ed.2d 163 (1971). We deem *United States v. Burkhart*, 458 F.2d 201 (10th Cir. 1971), to be inapposite. In *Burkhart*, the "other" criminal activities were two prior convictions which had occurred many years before the commission of the crime for which the defendant was then on trial, and hence these prior criminal acts were unrelated to the particular transaction which formed the basis for the subsequent prosecution. In *United States v. Del Purgatorio*, 411 F.2d 84 (2d Cir. 1969), the trial court admitted testimony of a conversation between a defendant and his coconspirator which occurred prior to the date of the conspiracy as alleged in the indictment. In affirming the trial court, the Second Circuit held that the conversation was admissible because "it was relevant to show the beginning of appellant's involvement in the criminal enterprise and his state of mind at the time." And in *Collins v. United States*, 383 F.2d 296 (10th Cir. 1967), we held that evidence of criminal activity occurring after the date of the conspiracy as alleged in the indictment was admissible to establish a course of conduct, common scheme, design, or intent. In our view the trial court in the instant case did not err in permitting the witness Schmidt to develop his relationship with Rhodes from the beginning to the end. Most certainly such tended to show a "course of conduct," a continuous course of conduct we might add. The trial court fully admonished the jury as to the limited purpose for which such evidence was being received. There is no error in this regard.

■ Rhodes also contends that the Government either intentionally or negligently "destroyed" certain physical evidence and that the defendants were accordingly denied their right to examine this particular bit of evidence by way of preparation for trial. This is a rather extravagant charge which is simply not borne out by the record. As above indicated, Norton, the FBI agent, inspected the VIN on certain Porsche cars which had been purchased from Beathune. As to each vehicle, he made a record of the VIN which appeared on a metal plate affixed to the bottom of the trunk. He then applied the so-called acid test to determine if the VIN had been altered. Where there had been an alteration, the original VIN reappeared and he then made a record of the original VIN. In the process of applying the acid test, agent Norton apparently destroyed the altered VIN to the end that the only evidence of the altered VIN was agent Norton's records. An expert called as a defense witness testified that there was a technique whereby the original VIN could be ascertained and at the same time the altered VIN could be preserved. In this regard it should be noted that agent Norton was conducting his tests under field conditions, and not in the laboratory. In any event, the trial court conducted a full hearing on this charge of destroying evidence and found that no "evidence has been impaired or * * * suppressed or destroyed by improper Government testing procedures." The trial court further found that there was no "bad faith" on the part of agent Norton, and accordingly denied the motion to suppress agent Norton's testimony. We would simply note that the trial court's findings on this particular matter are fully supported by the record.

In response to subpoena Jack Beathune produced the business records of his

company, Bavarian Motors, which showed, among other things, his various purchases of Porsches from not only Rhodes, but also Schmidt and the other named coconspirators. Upon trial these records were introduced as part of the Government's case-in-chief. Beathune made no objection, but Rhodes did. At this point the records were received into evidence, apparently as to Beathune only. Later, however, in denying Rhodes' motion for acquittal made at the conclusion of the evidence, it became evident that the records were being considered as to both Beathune and Rhodes.

■ It is Rhodes' claim that the records in question were not properly introduced as having been kept in the usual course of business. We do not agree. The records in question may well indeed have been properly received into evidence as to both defendants in the first instance. In any event, Beathune testified in his own behalf. (Rhodes did not). Beathune's testimony certainly cleared up any doubt on the matter and showed that the records were kept under his direction by his assistant and in the usual course of the business of the company. The records showed the numerous purchases made by Beathune from Rhodes. Actually, however, there is no real dispute but that Rhodes sold some fifteen to twenty Porsches to Beathune, and the only real issue is whether Rhodes knew that he was trafficking in stolen property.

■ Attack is made by Rhodes on the sufficiency of the evidence to sustain his conviction. Our study of the record leads us to conclude that there is ample evidence, both direct and circumstantial, to sustain the conviction. Schmidt's testimony certainly indicates guilty knowledge on the part of Rhodes. And the nature of the entire operation suggests criminality. The evidence, for example, showed a forging of ownership papers. Also, all purchases by Beathune were paid for by check and, according to Beathune, the price paid was in all instances the fair market value of the vehicles in question. Such overlooks other testimony showing that Schmidt, Rhodes and Beathune would immediately cash the checks given by the latter and that Schmidt and Rhodes would then make a "kickback" to Beathune in cash. Also to be considered in passing on the sufficiency of the evidence is the inference which may properly be drawn from the possession of recently stolen property. In this latter connection we find no error in the instruction given by the trial court to the jury.

At the end of the first day of jury deliberation the trial court, without advising counsel, allowed the jury to separate until the following morning when deliberations were again resumed. Counsel for Rhodes contends that such violated Rhodes' constitutional right to be present at all stages of his trial.

■ In support of his position Rhodes cites the recent case of *Rogers v. United States*, 422 U.S. 35, 95 S.Ct. 2091, 45 L.Ed.2d 1 (1975). We deem that case to be inapposite. There, in the absence of counsel, the trial judge, in response to a note from the jury, advised the jury that he would accept a verdict of "guilty as charged with extreme mercy of the Court." The jury promptly brought in such a verdict. The Supreme Court reversed the conviction in *Rogers*. Such is quite different from the instant case. Here, nothing transpired in the absence of the defendant or his counsel that had anything to do with the merits of the case. All the trial court did was to allow the jury to separate for the evening recess without informing counsel and gaining their consent thereto. In this regard, *see Hines v. United States*, 365 F.2d 649 (10th Cir. 1966). In that case we held that a trial court has "full discretion" in determining when a jury shall be allowed to separate during its deliberations and that consent of the accused to such separation is not necessary. In *Hines* there was no showing of any resulting prejudice to the defendant, nor is there any showing of prejudice in the instant case.

Judgments affirmed.