**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**William Earl BURKHART, Defendant-
Appellant.**

**No. 71–1384.**

United States Court of Appeals,
Tenth Circuit.

Feb. 14, 1972.

Adrian M. Farver, Asst. U. S. Atty. (Robert J. Roth, U. S. Atty., on the brief), for plaintiff-appellee.

Norman S. Norburg, Topeka. Kan., for defendant-appellant.

Before LEWIS, Chief Judge, and HILL, SETH, HOLLOWAY, McWILLIAMS, BARRETT and DOYLE, Circuit Judges.*

WILLIAM E. DOYLE, Circuit Judge.

This is an appeal from a conviction in a criminal prosecution in which the defendant was charged with interstate transportation of a stolen motor vehicle, contrary to the so-called Dyer Act, 18 U.S.C. § 2312. The substance of the charge was that the defendant had on September 26, 1970, transported in commerce a 1961 Ford station wagon from Ashland, Kentucky to Ellsworth County, Kansas, knowing it to have been stolen.

The witnesses who testified on behalf of the government were Paul Saunders, the owner of the subject vehicle and a used car dealer in Ashland, Kentucky, Alvin Matheson, a Kansas State Highway patrolman, and John T. McMurrer, Special Agent for the FBI.

Saunders had not had a previous acquaintanceship with the defendant. He merely identified the vehicle as his property and further testified that on August 3, 1970, the car was missing from his used car lot; that it had been on the lot on the afternoon of August 3. He also testified that there had not been any species of a sales transaction involving the car and that although he had not been present his manager stated that he had not given anyone permission to drive it even temporarily.

The Kansas Highway patrolman testified that on September 26, 1970 (some seven weeks after the car was taken) he was notified by the Ellsworth County Sheriff that there was a suspicious vehicle on a filling station lot adjacent to Interstate Highway 70 in Ellsworth County, Kansas. In going to the scene,

* Originally argued before PICKETT, HILL and DOYLE, Circuit Judges.

Patrolman Matheson found the 1961 Ford station wagon. Defendant was sitting in the front seat under the wheel and there were three other occupants in the back, all of whom were asleep. Before awakening these individuals Patrolman Matheson checked with the National Crime Information Center and ascertained that the car had been reported stolen. He returned to the scene, awakened the occupants and arrested them. Defendant stated that he owned the vehicle, that he had purchased it, and that he had a registration receipt but was unable to find it. The other passengers were not involved. They were hitchhikers who had been picked up by the defendant near Salina, Kansas. The officer sought in vain to obtain some indicia of ownership from the defendant.

FBI Agent McMurrer testified concerning his interview of the defendant following the latter's signing of a waiver form. The defendant's version as given to the agent was that he had purchased the vehicle in early August from the owner of Paul's Used Car Lot in Ashland, Kentucky for a purchase price of $200.00. He said that he had made no payments, but was at the time endeavoring to raise money for this purpose. Defendant added that he had lost the bill of sale in his travels.

The agent also identified Exhibits 4 and 5, which were certified copies of convictions for prior Dyer Act violations. The first of these occurred June 2, 1955, in the District of Oregon. The other, dated March 17, 1966, involved the interstate transportation of a stolen motor vehicle in the Southern District of Mississippi. The certified copies showed the defendant had entered pleas of guilty. The particular circumstances of these convictions were not shown.[1]

The defendant's contentions on this appeal are:

First, that the evidence was insufficient particularly to establish that the defendant had knowledge that the vehicle was stolen.

Secondly, that the court erred in receiving in evidence the prior convictions which had been offered as similar offenses to prove intent.

I.

■ There was ample evidence to support the jury verdict of guilt. 1. Unquestionably, the vehicle was transported by defendant in interstate commerce. 2. There was substantial evidence that the vehicle had been stolen. 3. There was legally sufficient evidence to establish the element of criminal intent or knowledge quite apart from the prior convictions which are referred to above. The owner testified that the vehicle was taken without permission. The defendant was found in exclusive possession of the vehicle some seven weeks after its disappearance. He was at the time, and had been, exercising dominion over it. Although defendant claimed that he had purchased the car, he at the same time admitted that he had not paid anything, and he did not produce any tangible evidence as to the truth of his contention. Thus, the basic facts and circumstances are more than sufficient to dispel every doubt as to his guilt.

II.

The so-called similar offense evidence consisted of certified copies of the judgments of conviction. These were not shown to have been connected with the case on trial either as a part of the transaction on trial or to have been related transactions in terms of sharing a common plan, scheme, design or intent, or in terms of factual or other similarity except that they were all Dyer Act violations. The trial court's cautionary instruction at the time was that this evidence was to be considered by the jury only for the purpose of determining whether defendant acted willfully and

---

1. Indeed it was not shown that defendant was the same man and this had not been admitted at the omnibus hearing. Defendant merely stipulated that the records were authentic.

with specific intent and not because of mistake or accident or other innocent reason.[2] We have no criticism of either the accuracy or sufficiency of this instruction. It is the extreme remoteness in time and space, together with the lack of any apparent similarity or connection with the principal charge, which creates the problem.

### A.

■ The general rule applicable to receiving evidence of other crimes, wrongs or acts is simply enough stated. Such evidence in the first instance is inadmissible. There are, however, several exceptions which allow such evidence to be received in special circumstances and for limited purposes. It may be received for the purpose of proving a common plan, scheme or design to commit the offense charged or for the purpose of proving motive, opportunity, intent, knowledge, identity or absence of mistake, inadvertence or accident.

Too often we lose sight of the fact that the rule is primarily a rule of exclusion of evidence and not one of admission, and, although there are many exceptions, these do not detract from the general exclusionary approach which the rule demands.[3]

Several factors have contributed to formulation of a cautious judicial attitude.

First, the accused is required to defend charges which are not described in the information or indictment. As a result he is required to defend past actions which he may have in the past answered and with respect to which he may have even served his sentence. Thus, he is in effect tried as a recidivist though such a charge is not a part of the federal criminal code.

Secondly, although such evidence may have at least some relevance to the offense being tried, its predominant quality is to show up the defendant's character as a car thief or a bad check artist, for example. Proof of defendant's sociopathic disposition is not a valid object. Showing that a man is generally bad has never been under our system allowable. The defendant has a right to be tried on the truth of the specific charge contained in the indictment.

Third, an obvious truth is that once prior convictions are introduced the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality. This is true regardless of the care and caution employed by the court in instructing the jury.

2. The full text of the instruction given reads:

"Members of the Jury, the Government is undertaking to offer evidence of crimes other than the one charged against the Defendant as evidence in the case. Now, such evidence of similar conduct in another case is admissible only to establish a course of conduct, or a common scheme, or design or intent. Such evidence of an alleged earlier offense of a like nature may not be considered by the Jury in determining whether the Defendant did the act charged in the information, but you may consider it only for the purpose of determining whether the Defendant acted willfully in this case, and with specific intent, and not because of a mistake, or accident or other innocent reason."

3. See Morgan v. United States, 355 F.2d 43 (10th Cir. 1966), wherein the court (by Judge Seth) said:

Evidence of other crimes than the one charged must however have a real probative value, and not just a possible worth on issues of intent, motive, absence of mistake or accident, or to establish a scheme or plan. These are the key words which express the purpose for which an exception to the general exclusionary rule is applied under prior decisions. The words are however not without limit as to breadth and meaning. They must be and will be realistically and closely defined and limited. They cannot become an occasion or excuse or device for offering evidence of other crimes which have little or no real probative value or which is cumulative. This matter is obviously a most sensitive one for the accused and for the trial court. The risk and danger is great, and this must be recognized when considering the probative value of such evidence of specific acts offered to prove the crime charged. 355 F.2d at 45.

Thus, it is clear that the problem is not a simple evidentiary one, but rather goes to the fundamental fairness and justice of the trial itself.

### B.

We have not been able to discover a precedent in either this Circuit or in the Eighth Circuit prior to 1929, when the Tenth Circuit was created out of the Eighth Circuit, which approves the use of a man's prior criminal history to show commission of the same offense on a similar offense theory in the manner it was done here.

In a relatively early decision, Paris v. United States, 260 F. 529 (8th Cir. 1919), the necessity for proof of the similar offense was stressed. The defendants were on trial for the sale of narcotics in Oklahoma City. A prior transaction alleged to have occurred in Tulsa was offered and received. Failure to prove the similar offense was held to preclude its use. The court said that evidence of a vague and uncertain character regarding such an alleged offense was not admissible. The court further said that it was inadmissible not only because of the failure of proof, but also because it was unconnected with the subsequent case on trial.[4]

Subsequently, Judge Kennedy[5] writing for the court in Gart v. United States, 294 F. 66 (8th Cir. 1923), followed the Paris decision in another narcotics case, pointing out the limitations on the receipt of such evidence and saying:

> Only in exceptional cases is the proof of such transactions admissible. Where a case falls within the exception, the proof must be clear and convincing. 294 F. at 67.

In that case also it was concluded that the attempted proof of the similar offense fell short of establishing it and resulted in merely a suspicious circumstance.[6]

One of the very early cases from this Circuit is Coulston v. United States, 51 F.2d 178 (10th Cir. 1931). Judge McDermott in a careful opinion noted that in the civil law, as well as the early common law, evidence of other crimes was admitted on the theory that a person who has committed one crime is apt to commit another. The opinion of the court went on to say:

> The inference is so slight, the unfairness to the defendant so manifest, the difficulty and delay attendant upon trying several cases at one time so great, and the confusion of the jury so likely, that for more than two hundred years it has been the rule that evidence of other crimes is not admissible. 51 F.2d at 180 n. 1.

Judge McDermott wrote on the subject again in Butler v. United States, 53 F.2d 800 (10th Cir. 1931).[7] There he pointed out that such similar offenses must not be too remote in time. He said:

> . . . [i]n cases where the prosecution must prove a specific intent, evidence of other similar transactions, not too remote in point of time, is admissible to prove the intent or motive of the defendant in the particular transaction for which he is on trial. 53 F. 2d at 805.

Arguably a more liberal rule should be applied in cases in which a specific intent is an element of the offense charged. However, Judge Sanborn rejected this attempted distinction in Niederluecke v. United States, 21 F.2d 511 (8th Cir. 1927), which was a stolen mo-

---

4.  The court commented that:
    Such evidence tends to draw the attention of the jury away from a consideration of the real issues on trial, to fasten it upon other questions, and to lead them unconsciously to render their verdicts, in accordance with their views on false issues rather than on the true issues on trial. 260 F. at 531.

5.  United States District Judge, Wyoming.

6.  The obvious reason for requiring evidence is so that the similarity can be tested.

7.  Judge Orie L. Phillips was a member of the panels in both *Coulston* and *Butler*.

tor vehicle prosecution; he stressed that regardless of whether similar offenses are used to prove motive, intent or guilty knowledge, or general plan or scheme, the evidence should never be received unless there is some clear and logical connection between the alleged similar offense and the case being tried.[8] In summing up the reasons for excluding the similar offense evidence in that case the court said it was because:

(a) . . . there was no evidence that there was any rational or logical connection between the unlawful transportation of the two Ford coupés in violation of the law of the United States and the stealing and possession of the Ford sedan twenty-one days later in violation of the law of the State of Missouri; (b) because the later offense, being later in time, had no possible causal effect upon the commission of the former; (c) because the later offense was neither similar to nor of the same class as the earlier offense on trial; and (d) because it does not appear that the commission of the later offense had or could have had any tendency to prove the commission of the former or earlier one. 21 F.2d at 513.

### C.

The more recent decisions of this court do not evidence any relaxation of the rule or expansion of the exceptions. See United States v. Coleman, 410 F.2d 1133 (10th Cir. 1969); Moran v. United States, 404 F.2d 663 (10th Cir. 1968); Holt v. United States, 404 F.2d 914 (10th Cir. 1968), cert. den., 393 U.S. 1086, 89 S.Ct. 872, 21 L.Ed.2d 779 (1969); Mills v. United States, 367 F.2d 366 (10th Cir. 1966); and Tandberg-Hanssen v. United States, 284 F.2d 331 (10th Cir. 1960).

*Coleman* was a Dyer Act prosecution in which the defendant had several times used stolen credit cards, forging the name of the owner in renting automobiles.

In *Holt*, which involved a counterfeiting charge, a previous incident was allowed for the purpose of proving intent, but the court said that such evidence was admissible only "if so related to the crime charged as to indicate motive or intent . . . . as to the charge under consideration." 404 F.2d at 920.

*Moran* was also a Dyer Act prosecution in which the same false identification was used in cashing bogus checks for the purpose of obtaining a total of four automobiles at different times and places. Here again it was received in order to prove intent.

*Mills* was also a Dyer Act case in which the defendant had issued no account checks in the course of a series of incidents, all of which took place within a period of months. He had purchased a used car with such a no account check. However, the court (Judge Pickett writing) ruled that the check issuing escapade had no tendency to prove the elements of the offense charged in the Dyer Act. It was said that the similar offense rule "ordinarily excludes all evidence of crimes unconnected with the offense charged . . . . " and that the exceptions to the rule allow evidence if it connects the accused with the crime or establishes some element or material fact of the crime. 367 F.2d at 367.

*Tandberg-Hanssen* was also a Dyer Act prosecution in which the defendant had converted a rented car. A similar incident which had occurred two months before was ruled relevant.

8. 21 F.2d at 513. Judge Sanborn said further that:
"Without this obvious connection, it is not only unjust to the prisoner to compel him to acquit himself of two offenses instead of one, but it is detrimental to justice to burden a trial with multiplied issues that tend to confuse and mislead the jury. The most guilty criminal may be innocent of other offenses charged against him, of which, if fairly tried, he might acquit himself. From the nature and prejudicial character of such evidence, it is obvious it should not be received, unless the mind plainly perceives that the commission of the one tends, by a visible connection, to prove the commission of the other by the prisoner." *Id.*

In *Morgan*[9] it was held that the sale of tools found in an automobile taken by the defendant from his employer was admissible in the Dyer Act prosecution to prove intent.

Finally, in Sanseverino v. United States, 321 F.2d 714, 716 (10th Cir. 1963), which was a prosecution for attempting to evade income tax, similar conduct in prior years was shown. The court through Chief Judge Lewis there pointed out that this evidence was admissible to show continuity of motive and intent and this was permissible "at times proximate to that charged in the indictment."

The above representative decisions of this court, both the recent ones and the earlier ones, furnish the guides for both the present and the future. They also attest to the fact that the rule and its exceptions have remained constant. Although there have been minor variations, no decision or decisions within this large body of law consisting of some 44 Tenth Circuit cases contains either language or holding which lends support to acceptance in evidence of remote and unconnected offenses such as those involved in the present case. In short, it is a discordant note in an otherwise harmonious body of law.

The revised Draft of Proposed Rules of Evidence §§ 403 and 404 merely codifies the existing rules and does not either relax or strengthen the formulations that appear in the cases. Like the decisions, it cautions against use of this evidence to prove the defendant's character. See § 404 and see the Advisory Committee's Comment which recommends a weighing approach to administration of this rule:

> In this situation the rule provides that the evidence *may* be admissible. No mechanical solution is offered. The determination must be made whether the danger of undue prejudice outweighs the probative value of the evidence, in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403(a). Slough and Knightly, Other Vices, Other Crimes, 41 Iowa L.Rev. 325 (1956).

Section 403(a) prohibits receiving such evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." To this same effect is Wright, Federal Practice and Procedure § 410, pages 132–133. That distinguished author prescribes balancing the strength of the evidence against the degree to which the jury will probably be aroused by it.

### D.

There is a tendency, by some courts at least, to equate the doctrine which allows the showing of prior convictions when the defendant becomes a witness in his own behalf with the similar offense rule which we are here considering. A decision which allowed a defendant's numerous convictions to be brought out on cross-examination and then considered as proof of similar offenses is that in United States v. Mancuso, 423 F.2d 23 (5th Cir. 1970), cert. denied, 400 U.S. 839, 91 S.Ct. 79, 27 L.Ed.2d 73 (1970).[10] The two rules do not serve the same objectives and are not coterminous in application. The purpose of the credibility rule is strictly limited to the bearing which such convictions have on the character of the defendant as a witness, and, in the past at least, this rule has been far less restrictive in permitting what often appear to be irrelevant convictions. The similar offense doctrine on the other hand applies to the prosecution's case-in-chief and has a substantive purpose. Thus, the two doctrines are vastly different and should not be interchanged.

In this Circuit the difference was pointed out in Coulston v. United States,

---

9. See Note 3, *supra.*

10. So far as we have been able to ascertain, *Mancuso* is the only authority which even obliquely supports the acceptance of evidence of this kind to prove plan, scheme, design, intent, etc.

51 F.2d 178 (10th Cir. 1931), wherein it was said:

> If the defendant takes the witness stand, a different rule comes into play. He steps out of his character as a defendant, for the moment, and takes on the role of a witness, and as such becomes subject to cross-examination in the same manner and to the same extent as any other witness. 51 F.2d at 181.

In accordance with the foregoing we conclude:

■ 1. The judgment in this case must be reversed primarily because of the lack of manifest relevancy of the evidence of other or similar offenses in relationship to the cause on trial. The evidence is neither an inseparable part of the case on trial nor does it serve to supply anything more than irrelevant and invalid support of any element of the charge. The plan, scheme, design or intent was not shown to be a common one in relationship to the offense charged and this is an essential requirement.

2. The prejudice which necessarily flows from proving that the defendant had been twice convicted of the same offense in prior years (in the remote past) is great. It casts a shadow over the remaining evidence so that a jury hearing this is necessarily distracted from considering the particular merits. The result is that the defendant is tried and convicted on his prior record rather than on the particular allegations of the indictment.

3. The fact of *conviction* or *acquittal* of the similar offense, although not a decisive factor, is to be seriously weighed by the trial judge in deciding whether resulting prejudice outweighs probative value.

4. Factual similarity is to be considered and weighed in determining the strength attributable to the relevancy factor.

■ 5. Continuity of the offenses or a connecting link between the case on trial and the tendered similar offenses is always essential and is to be considered

regardless of whether the evidence is offered to prove a plan, scheme, design, motive, knowledge or intent. The court should consider the fact that state of mind is not a continuous and never ending condition, and hence it is not to be presumed or inferred that once an accused has been adjudged to have a criminal turn of mind that this continues until shown to have terminated or changed. The lack of showing of a common plan, scheme, design or intent is of itself a fatal deficiency here.

Applying the standards stated above, the error in receiving the evidence in this case was substantial and not harmless.

The judgment of the district court is reversed and the cause is remanded for a new trial.

BARRETT, Circuit Judge (concurring in part and dissenting in part).

I concur with the majority in the result only. I agree that the trial court should not have admitted into evidence the certified copy of Burkhart's conviction of a Dyer Act violation which was entered June 2, 1955, some fifteen years prior to the Dyer Act violation charged here. That conviction was too remote in time. Having thus determined, I believe that trial judges are entitled to specific guidance relating to the admission of prior convictions during the Government's in-chief presentation. Those guidelines are lacking, in my judgment, in the majority opinion. For that reason I respectfully dissent in part.

The majority opinion has placed almost insurmountable roadblocks to receipt in evidence of prior convictions during the Government's in-chief case in keeping with the exceptions heretofore recognized by this Court. This Court should either: (a) uphold the exceptions to the rule with specific guidelines relating to the aspects of admissibility and remoteness which are crystal clear, or (b) overrule the exceptions to the rule entirely.

Notwithstanding the commands of Burgett v. Texas, 389 U.S. 109, 88 S.Ct.

258, 19 L.Ed.2d 319 (1967), holding that a constitutionally invalid prior conviction is inherently prejudicial and cannot be admitted into evidence, or, if admitted, constitutes prejudicial error, the majority opinion condemns the admission of constitutionally valid prior convictions unless there is evidence of "factual or other similarity" between the principal charge and the prior convictions. The majority makes it clear that the fact alone that the prior convictions were for Dyer Act violations does not satisfy its requirement that the prior convictions for the same and identical offense charged are, per se, related transactions unless there is evidence of "factual or other similarity". The majority does not clearly explain what is meant by "factual or other similarity". Nor is there any attempt to explain how the "factual or other similarity" is to be proved. If it is suggested that a government officer or government chief witness from a prior Dyer Act conviction trial appear at the principal trial and testify as to the "facts" in the prior proceedings, certainly an accused could be expected to challenge such testimony as violative of due process. It could not be the best evidence. Or if it is intimated that the trial judge obtain and read the entire transcript of trial leading to a prior conviction, this burden could not be carried. The requirement of "factual or other similarity" used in the majority opinion is unwarranted. The elements of the Dyer Act, 18 U.S.C. § 2312, require proof that the defendant transported a vehicle or aircraft in interstate commerce knowing, at the time, that it was stolen. As a practical matter Dyer Act violations are never factually or otherwise similar except in relation to the elements of the crime.

The majority, while recognizing that trial courts are vested with discretion in the in-chief admission of prior convictions, nevertheless finds that this discretion was abused on the issue of remoteness. Here the principal charge dated to a Dyer Act violation which occurred on September 26, 1970. The prior Dyer

Act convictions were entered on June 2, 1955 and March 17, 1966. The first dated back some fifteen years, the second only four years. Yet the majority opinion couples both prior convictions in observing that they are remote in time and space and lacking in any similarity. The 1966 conviction was simply not remote.

I agree that a prior conviction dating back fifteen years is too remote. Having so determined, it follows that trial courts are entitled to specific guidelines. I would hold that evidence of prior convictions involving the identical or similar offenses represented by certified copies of judgments of convictions meeting the commands of Burgett v. Texas, *supra*, may be admitted into evidence at the discretion of the trial judge if not entered more than six (6) years immediately preceding the date upon which the principal offense is alleged to have been committed.

McWILLIAMS, Circuit Judge (dissenting).

I respectfully dissent, as in my opinion the majority takes an unduly restrictive view as to the admissibility of evidence of other offenses in a criminal proceeding. I recognize that the law on the subject, though abundant, is far from being definitive. However, in my view the preferred rule would be as follows:

1. The general rule is that evidence of other offenses is not admissible for the purpose of showing the commission of the crime charged;

2. however, the exceptions to the rule are so numerous and of such long standing that it is difficult to determine which is more extensive, the rule or the acknowledged exceptions;

3. one of these acknowledged exceptions is that evidence of other offenses is admissible to prove the accused's intent and in so doing negate the likelihood that the crime for which he is standing trial was the result of inadvertence, accident or mistake;

**210**

4. the "other" offenses must be similar to, but not necessarily the same as, the crime charged;

5. though other offenses must be similar to the one for which the accused is on trial, they may be disconnected and need not be closely related in time to the crime for which the accused is standing trial;

6. the remoteness in time of the other offense does not in and of itself render such evidence inadmissible, especially when the acts were repeated up to a comparatively recent time;

7. other offenses may be proved in a variety of ways, one of which is proof of an actual conviction of the other offense; and,

8. the trial court, if it receives evidence of other offenses, should instruct the jury as to the limited purpose for which the evidence is being received.

In the instant case, Burkhart was charged with a Dyer Act violation, namely, the transportation from Kentucky to Kansas of a stolen vehicle with knowledge that the vehicle in question was stolen. By his plea of "not guilty" and by his utterances to the Kansas Highway patrolman at the time of his arrest and later to the FBI agent, Burkhart denied guilty knowledge and thereby put in issue the matter of his knowledge and intent. Thus, guilty knowledge or criminal intent was a very material element of the crime charged and the prosecution had the burden of proving such specific intent beyond a reasonable doubt.

Some four years before the date of the commission of the crime for which Burkhart was then on trial he had been convicted of another Dyer Act violation. And eleven years before that date he had been convicted of still another Dyer Act violation. I agree with the trial court that evidence of these two prior Dyer Act convictions was admissible as having logical bearing and probative value on the issue of Burkhart's mental intent as he motored from Kentucky to Kansas in a stolen vehicle. Such evidence tends to negate the likelihood that his transportation of the stolen vehicle from Kentucky to Kansas was with a pure heart or was somehow the result of inadvertence, accident or misunderstanding. This is an instance where a person's past conduct does give insight into his present actions.