**F I L E D**

**UNITED STATES COURT OF APPEALS**

**June 17, 2005**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JOHN E. McNEILL,

Defendant-Appellant.

No. 04-3092
(D.C. No. 03-CR-40053-02-JAR)
(Kansas)

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

NORMAN A. PARADA,

Defendant-Appellant.

No. 04-3130
(D.C. No. 03-CR-40053-01-JAR)
(Kansas)

**ORDER AND JUDGMENT***

Before **KELLY**, Circuit Judge**, McWILLIAMS**, Senior Circuit Judge, and **TYMKOVICH**, Circuit Judge.

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In a two-count indictment filed in the United States District Court for the District of Kansas, John E. McNeill, Norman A. Parada, Kelly Ann Bradley and Tiffany C. Poulin were charged as follows: in Count 1, with possession with an intent to distribute 100 grams or more of phencyclidine ("PCP"), a controlled substance, in violation of 21 U.S.C. § 841(a)(1) with reference to 21 U.S.C. §841(b)(1)(A), and 18 U.S.C. §2; and in Count 2, with conspiring with each other, and others, to distribute 100 grams, or more, of PCP, in violation of 21 U.S.C. § 846 with reference to 21 U.S.C. §§841(a), 841(b)(1)(A), and 18 U.S.C. §2..[1]

Prior to trial, McNeill and Parada each filed, *inter alia,* a motion to suppress, which was denied by the district court, after hearing. *United States v. Parada, et al.,* 289 F.Supp.2d 1291(D.Kan. 2003). In a joint jury trial, McNeill and Parada were convicted on both counts of the indictment. McNeill was sentenced to imprisonment for 240 months and Parada was sentenced to imprisonment for 405 months. At trial, each was represented by his own counsel, and each filed a timely notice of appeal. In this court, separate briefs were filed. However, for dispositional purposes, both appeals will be consolidated. Background facts are necessary to give meaning to the issues raised on appeal.

On March 12, 2003, at about 1:30 p.m., James Oehm, an officer with the Junction

---

[1]We are not here concerned, as such, with defendants Bradley and Poulin, who, pursuant to a plea agreement, pled guilty to other, and lesser, charges, and ultimately testified as government witnesses in the joint jury trial of McNeill and Parada.

City, Kansas, Police Department, stopped a Ford van bearing Maryland tags on Interstate 70 approximately 10 miles outside Junction City, Kansas. Officer Oehm was also a deputy for the Geary County drug task force unit (the county in which Junction City is located), and, because of that fact, customarily had "a drug-sniffing canine" with him, as he did on this occasion. After following the van for about one mile, the officer stopped the van because he observed the vehicle cross the right line of the lane at least twice and then drive back on the center white line of the highway in violation of Kansas law. KSA 8-1522(a). After stopping the van, Oehm made contact with the driver, Kelly Bradley (a female), who, on request, handed him a Virginia driver's license. At that time, the officer observed McNeill (a male) seated in the front passenger seat, and Tiffany Poulin (a female) and Parada (a male) lying down in the back seat. At the same time, he also noticed the "strong odor" of air fresheners coming from the left rear window of the van, which was open. In this regard, he also noticed an air freshener hanging from the left rear window and two others inside the vehicle.

Bradley, upon request, gave the officer her driver's license and a rental agreement for the van, and, according to the officer, she was at that time "visibly shaken, somewhat nervous" as evidenced by her rapid breathing, a panicked look on her face, and trembling hands. The officer asked Bradley about her travel plans and she advised him that she was coming from Colorado and going home to Virginia. Officer Oehm returned to his patrol car and ran this information through the dispatcher. The rental agreement appeared to

- 3 -

have expired, and the vehicle had been rented to a "Saketha Champion," who was not an occupant of the vehicle. The rental agreement showed no additional authorized driver other than the named lessee, though the name "Kelly Ann Bradley" had been penned in, over printed language in the agreement indicating that no driver other than the named lessee was permitted to drive. The rental agreement also provided that the van was not to be driven outside the state of rental, which was Maryland, with the exception of "MD, DC, VR, NC, and SC."

After running his check, the officer came back to the van, returned to Bradley her license and rental agreement, and gave her a warning ticket for a lane violation. The officer then asked her, "Could I ask [you] a couple of other questions?", to which she replied, "sure." Officer Oehm asked her why she had gone to Colorado and she replied that she went there to attend a wedding. The officer next said, "You guys aren't bringing back anything illegal with you from Colorado, are you?" and Bradley, who appeared to have panicked again, looked over at McNeill, and then said, "No." Officer Oehm then said to Bradley, "Would you have a problem if I checked quick to make sure?" Bradley demurred and did not consent to a search of the van. Without responding further, the officer told Bradley that he "would grab a dog and walk him around." Officer Oehm then took his dog (named Rico) out of the patrol car and walked the dog, counterclockwise, around the van. During this walk, Rico gave a positive alert for the presence of illegal drugs while near the area of the driver's window. After receiving the alert, the officer put

- 4 -

the dog back in the patrol car, returned to the van and told the four occupants thereof they were going to have to step out of the vehicle. A videotape of this incident showed that one minute and 37 seconds elapsed from the time the officer returned Bradley her license to the time the dog alerted on the van and 39 seconds elapsed from the time the officer told Bradley he would get his dog to the time the dog alerted.

While all of the occupants were standing on the side of the road, Officer Oehm, assisted by a backup officer who had just arrived, conducted a roadside search of the vehicle. They found in the rear of the van a large cooler which was covered by bags of clothing. Inside the cooler, they observed two half-gallon sized Tree Top brand apple juice jugs that contained a fluid resembling apple juice. The officers opened the bottles and detected an over-whelming chemical odor emanating from the bottles. When Officer Oehm asked what was in the jugs, no one replied. Oehm then asked Bradley and the other occupants of the car to follow him to the Junction City Police Department warehouse, where he continued to search the van. A small amount of marijuana was found in the map pocket in the front passenger door during that search. Samples of the contents of the two jugs were later taken and, after testing, showed that the two jugs contained approximately 340 grams of PCP, with an estimated street value of $448,000.00.

McNeill

On appeal, McNeill raises two issues: (1) the district court erred in denying his

motion to suppress; and (2) the district court erred in denying his motion for discovery of Rico's training records. We are not persuaded by either argument.

The district court in denying McNeill's motion to suppress found that Officer Oehm's stopping of defendants' van was lawful and not pretextual in nature. Counsel suggests that the stopping of the defendants' van was the result of racial profiling. In this regard, Bradley, the driver, was white, the other three occupants were Afro-Americans. At the hearing on McNeill's motion to suppress, Officer Oehm testified that, though he saw that the driver of the van was a "white" person, that, because of tinted windows, he could not see the others in the van, though he did know, before stopping the car, that there were passengers in the vehicle. In any event, the record clearly supports the district court's holding that Office Oehm's stopping of defendants' van was pursuant to a perceived traffic violation, and was not the product of racial profiling.

Counsel then argues that, although the initial stop may have been lawful, the subsequent "detention" of McNeill, violated his Fourth Amendment rights. Counsel's argument is that, after Officer Oehm returned Bradley's driver's license and the car rental agreement, any further detention violated McNeill's Fourth Amendment rights. This ignores the fact that after Officer Oehm returned the driver's license and car rental agreement to Bradley, he asked her if he could ask her a few additional "quick questions," to which she replied "sure." At that point in time, Officer Oehm's encounter with Bradley became "consensual" and any "detention" for asking the "quick questions" was

not unlawful. By the time Bradley declined to give her consent to Oehm's proposed search of the van, Officer Oehm had "reasonable suspicion," which permitted his use of Rico to "sniff" the van, and when Rico alerted, Officer Oehm had "probable cause" to search the van. *See Illinois v. Caballes,* 125 S.Ct. 834 (2005).

The government in its brief argues that the stop and search of the vehicle did not violate any of the van's occupants' Fourth Amendment rights, and that, in any event, McNeill, as a passenger who did not own the van, had "no standing" to challenge the search. In this regard, it would appear that, under *United States v. DeLuca,* 269 F.3d 1128 (10th Cir. 2001), McNeill did lack standing, but such is, in a sense, academic, since the district court found, and we agree, that as a matter of fact, there was no unlawful search or seizure.

McNeill also asserts that the district court erred in denying his motion to discover the "training records" for Rico, the dog. Counsel, after stating that such is an issue, makes no argument in his brief in support thereof. It would appear from the record, however, that, before trial, counsel for McNeill received much of the material which he sought concerning Rico, his training and general sniffing expertise. In any event, we perceive no reversible error in this regard.

### Parada

Prior to trial, Parada filed a motion in limine seeking an order that the government not be permitted to introduce evidence in 2000, he had been convicted in California of

possessing cocaine with an intent to sell.  The district court, just prior to commencement

of the trial, denied the motion, concluding that evidence of that conviction was admissible

under Fed. R. Crim. Evid. §§ 403 and 404(b).  At the ensuing trial, the government, over

objection, called as its first witness a deputy probation officer from Los Angeles,

California.  The officer testified that his records indicated that in 2000, a person using the

name Alberto Guiterrez, pled nolo contendere to a charge of possessing cocaine with an

intent to sell.  The officer then went on to identify the defendant in the present case as

being the defendant in the California proceeding, where he was using the name Alberto

Guiterrez.  The facts and circumstances surrounding the California conviction were not

inquired into, nor were they otherwise before the trial court.[2]  It was on this state of the

record that the district court permitted into evidence, under 403 and 404(b), Parada's

California conviction.

In essence, the district court, without an evidentiary hearing, held that the mere

fact that the defendant was convicted in 2000 of possessing cocaine with an intent to sell,

with nothing more, tended to show that on March 12, 2003, Parada had "knowledge,

intent, absence of mistake, as well as motive" to possess with an intent to distribute 100

---

[2]There is nothing to indicate that the facts and circumstances surrounding Parada's California conviction were similar to the facts and circumstances surrounding the charges against him in the present proceeding, nor is there any suggestion that they were an "inseparable part" of the crime for which he was then on trial.  The district court's sole reason for denying Parada's request that evidence of his California conviction be suppressed was that it was admissible evidence under 403 and 404(b).

grams or more of PCP, and that he conspired to do so, and, still further, the court then went on to hold that the probative value of such "substantially out weigh[ed] the prejudicial effect" of such evidence.

Specifically, in denying Parada's motion to suppress any use at trial of his conviction in 2000 in California of possession of cocaine with an intent to sell, the district court spoke as follows:

> Because this defendant is going to place in issue whether he acknowledged that there was PCP in the vehicle, whether he had intent to possess it, whether he had the intent to distribute it, the fact that he had on a prior occasion been engaged in possession of a controlled substance with intent to distribute does have significant probative value. And so therefore I'll find that it is appropriate evidence under Rule 404(b) to show knowledge, intent, absence of mistake, as well as motive.
> And under the Rule 403 analysis, I find that the probative value substantially outweighs the prejudicial effect, again, because there are multiple people in this vehicle, and there are some questions here as to who, if any, of them were actually in possession or in constructive possession or had any knowledge of possession, intentional possession, of the substance in the vehicle.
> And the other charge, of course, is conspiracy. And that places in issue whether people were knowingly and willingly members of a conspiracy and participants in a conspiracy. So I will offer to the jury – I will read a limiting instruction advising them that they may only use this evidence for a limited purpose.

In our view, the district court erred in admitting evidence of the California conviction and the cautionary instructions given the jury in connection therewith, did not, indeed could not, cure that error. In short, the district court abused its discretion in

admitting evidence of Parada's California conviction. *United States v. Kravchuk,* 335 F.3d 1147, 1156 (10th Cir. 2003).

We believe the present case is controlled by *United States v. Burkhart,* 458 F.2d 201 (10th Cir. 1972). In *Burkhart*, the Court, sitting en banc, Judge Barrett concurring in part and dissenting in part, and Judge McWilliams dissenting, held that where the defendant was on trial for a Dyer Act violation, admission, over objection, of certified copies of two prior Dyer Act convictions occurring some four to fifteen years earlier constituted reversible error. In the present case, all we have is the testimony of the California probation officer that the defendant in the present case pled nolo contendere in 2000, nearly three years prior to the instant offense, to possessing cocaine, not PCP, with an intent to sell. Nothing more. Such clearly offends *Burkart.* We recognize that since *Burkhart,* we have on several occasions, distinguished the case there at hand from the "facts" in *Burkhart*[3]. However, the "facts" in the present case in our view clearly come within the purview of *Burkhart.* In this general connection, in *United States v. Biswell*, 700 F.2d 1310, 1319(10th Cir. 1983), we spoke as follows:

> On careful consideration of the record here we are convinced that the evidence of other crimes and misconduct as interjected was not justified under Rule 404(b). In any event we must hold that any probative value it had was also substantially outweighed by the

---

[3]For example, *see United States v. Naranjo,* 710 F.2d 1465, 1468 (10th Cir. 1983), *United States v. Van Cleave*, 599 F.2d 954, 957 (10th Cir. 1979), *United States v. Beathune,* 527 F.2d 696, 700 (10th Cir. 1975) and *United States v. Hampton,* 458 F.2d 29, 31 (10th Cir. 1972).

danger of unfair prejudice so that its admission was an abuse of discretion under Rule 403. Moreover, "[i]mproper admission of evidence of a prior crime or conviction, even in the face of other evidence amply supporting the verdict, constitutes plain error impinging upon the fundamental fairness of the trial itself. *United States v. Parker,* 604 F.2d 1327, 1329 (10th Cir. 1978); *see also, United States v. Gilliland,* 586 F.2d 1384, 1391 (10th Cir. 1978).

We reject any suggestion that the error in this case was harmless. In this connection, in *Burkhart*, 458 F.2d at 203, where we reversed, we recognized that "the basic facts and circumstances [in that case] are more than sufficient to dispel every doubt as to his guilt." In this same connection, we also spoke in *Burkhart* as follows, "Third, an obvious truth is that once prior convictions are introduced the trial is, for all practical purposes, completed and the guilty outcome follows as a mere formality. This is true regardless of the care and caution employed by the court in instructing the jury." *Id.* at 204.

In view of our disposition of this appeal, we need not consider the other issues raised on appeal by Parada.

The judgment in No. 04-3092, *United States v. McNeill*, is affirmed.

The judgment of conviction in No. 04-3130, *United States v. Parada,* is reversed and the sentence imposed thereon is vacated. That case is remanded to the district court

- 11 -

with directions that further proceedings be consonant with the views herein expressed.

Entered for the Court


Robert H. McWilliams
Senior Circuit Judge