# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 21

**OCTOBER TERM, A.D. 2013**

<u>**February 11, 2014**</u>

DELBERT R. MCDOWELL,

Appellant
(Defendant),

v.                                                      No. S-13-0058

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Michael Davis, Judge*

*Representing Appellant:*

> *Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson, Chief Appellate Counsel; Kirk A. Morgan, Senior Assistant Appellate Counsel. Argument by Mr. Morgan.*

*Representing Appellee:*

> *Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; Jeffrey S. Pope, Assistant Attorney General; Darrell D. Jackson, Director, and David E. Singleton, Student Intern, University of Wyoming, College of Law, Prosecution Assistance Program. Argument by Mr. Singleton.*

*Before KITE, C.J., and HILL, VOIGT\*, and BURKE, JJ., and LAVERY, D.J.*

*\*Justice Voigt retired effective January 3, 2014.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**LAVERY, District Judge.**

[¶1]   Delbert McDowell appeals his convictions on six counts of sexual abuse of a minor in the third degree under Wyo. Stat. Ann. § 6-2-316(a)(i) and one count of sexual abuse of a minor in the second degree under Wyo. Stat. Ann. § 6-2-315(a)(i).  He claims the district court erred in holding that testimony he intended to rebut the State's W.R.E. 404(b) evidence was evidence of his character which opened the door to rebuttal by the State pursuant to W.R.E. 404(a)(1) and W.R.E. 405(a).  Finding no error, the judgment is affirmed.

## ISSUE

[¶2]   McDowell presents one issue for review by this Court:

> Did the trial court abuse its discretion when it ruled that defense counsel opened the door and allowed the State to introduce additional 404(b) evidence?

The State rephrases the same issue:

> Defendants can offer evidence about relevant character traits in their case-in-chief; but on cross-examination, a prosecutor may inquire into relevant specific instances of the defendant's conduct to rebut the offered character testimony.  Here, McDowell called a witness who opined about his good character when interacting with children.  On cross-examination, the prosecutor asked the witness if she knew McDowell had two misdemeanor convictions for sexually assaulting children.  Did the district court abuse its discretion when it allowed these questions?

## FACTS

[¶3]   McDowell, who lived in Georgia, came to stay with his brother's family during the summer of 2008, to help build a new bathroom in his home.  The amended information, filed January 17, 2012, alleged that on several occasions over the course of two weeks, McDowell approached B.M., his brother's 13-year-old foster daughter,[1] in the house or garage and touched her with his genitals, sometimes inside and sometimes

---

[1] In the summer of 2008, B.M. was a foster child; at the time of trial, she had been adopted by McDowell's brother and sister-in-law.

1

outside her clothing or pajamas.

[¶4] The State filed a notice of intent to introduce evidence pursuant to W.R.E. 404(b) on May 23, 2012, and an amended notice the next day. The district court held hearings on the State's notices on May 25, 2012, and May 29, 2012, after McDowell's counsel and the district court had an opportunity to review the second notice and the State had an opportunity to obtain more information about McDowell's prior convictions.

[¶5] Pursuant to analysis of the factors this Court prescribed in *Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342 (Wyo. 2002), the district court limited the scope of extrinsic misconduct evidence the State would be allowed to present at trial. Specifically, the district court ruled that the State could present the testimony of A.M., B.M.'s sister, that on one occasion during the same time frame, McDowell engaged in the same sexual conduct toward A.M., who was 14-years-old, as he directed at B.M., to show McDowell's motive, plan, intent, and absence of mistake. The district court further ruled that B.M.'s testimony that several instances of conduct similar to the charged offenses occurred during the summer of 2009, while her family and McDowell were visiting Florida, would also be admissible for the same reasons, as well as to show a continuing course of conduct toward B.M.

[¶6] The district court allowed the State to present the fact that McDowell was a registered sex offender because this evidence explained why B.M. reported the charged offenses two years after they occurred, when she learned McDowell was a registered sex offender. The State asked to present evidence of the felony conviction and two misdemeanor convictions, including facts of the crimes, but the district court limited the State to presenting only the facts of the felony conviction. The district court indicated preliminarily that presenting the facts of the two misdemeanor offenses in addition to the felony would be unnecessarily cumulative, but reserved a final ruling for trial.

[¶7] At the final pretrial conference, on June 1, 2012, the Friday before trial, the district court reaffirmed that it had not determined the admissibility of the misdemeanor convictions. The parties also discussed the proposed testimony of Dorie Steele, McDowell's sister, identified in his pretrial witness list. The State objected categorically that none of Ms. Steele's proposed testimony was relevant. The State argued to the district court that McDowell's amended pretrial memorandum said, "Miss Steele will testify regarding the defendant's upbringing, his role in his children's lives and the rest of the family. She will testify to the effect of the defendant being a registered sex offender and how he responds to that on a day-to-day basis." The district court correctly noted that much of that testimony would not be admissible, except that if the rules of evidence were read broadly, testimony that McDowell is around children all the time and there has never been a problem would probably be admissible as evidence of his character. The district court also warned McDowell that such evidence would open the door for the State to cross-examine Ms. Steele about what she really knew about McDowell's past.

2

[¶8]     During the State's case-in-chief, the district court determined that because the misdemeanors occurred near the same time as the felony, they did not add much in the way of probative value.  S.D., the victim in the felony case, A.M., and B.M. testified regarding the W.R.E. 404(b) evidence the parties and the district court had anticipated.  B.M. testified to three incidents of sexual contact with McDowell; first, in the hotel room the first day while Ms. Steele and Ms. Lynch were sleeping, then at the beach the next day, and finally back in the hotel room after going to the beach.

[¶9]     Three witnesses testified during the defense's case-in-chief.  McDowell's brother, B.M.'s foster father, testified that he discussed the fact that McDowell was a registered sex offender with his mother-in-law, who was watching the children that summer, and with people at his church, but he did not tell his children because they were too young.  He did allow McDowell to be around his children, believing that because McDowell was their uncle, he would not abuse them.  McDowell's brother also testified on direct examination about how McDowell was with kids:

> Q. Okay. Well, describe Uncle Del and how he is with your kids.
>
> A. Uncle Del, how he is with my kids? Uncle Del, I grew up with him. Uncle Del has been touchy-feely, playful ever since youth. Kids always loved Uncle Del, and so did my kids.
>
> Q. You say touchy-feely, playful. Was he that way with your children?
>
> A. Yes, he was.
>
> Q. Okay. And did you ever see anything that was inappropriate, that you thought might be inappropriate?
>
> A. Absolutely not.

[¶10] McDowell also called a friend, Veronica Lynch, to testify.  She testified that she accompanied McDowell and Dorie Steele during the family trip to Florida in the summer of 2009.  The McDowell family had two hotel rooms, one for men and one for women.  Because they were crowded, she stayed at a different hotel the first night.  She testified that McDowell was not alone with B.M. the first day.  The next day she returned back to the hotel during breakfast, went to the beach with the whole family, and stayed in their hotel room that night.  She testified that McDowell was not out of her sight the whole day.

3

[¶11] McDowell also presented the testimony of his sister, Dorie Steele. Ms. Steele has three children. She testified that in her family it was normal to be very "touchy" and affectionate, frequently kissing and hugging. She further testified that McDowell was always allowed to be around her children when they were young and that she did not "have any problem with Delbert being around" her children and that she did not "have any problems with" McDowell and her children while they were growing up. When asked on direct what kind of an uncle McDowell was, Ms. Steele described McDowell as "the fun uncle. He's the uncle that you want to be with. He's real juvenile. He's real attentive, and he's just a funning-loving (sic) uncle." Ms. Steele also testified that she went to Florida with McDowell and Ms. Lynch, and similarly did not see McDowell do anything inappropriate at the hotel or on the beach.

[¶12] On cross-examination, Ms. Steele reiterated her testimony that she had not ever had any problems with McDowell. The State inquired whether she would trust him around her children, and she replied that she would, although her children are now adults. The State inquired whether knowing he was a registered sex offender would change her opinion, and Ms. Steele replied that would depend on the circumstances. The State then attempted to clarify whether it was her present opinion that McDowell was safe around her grown children or safe around children in general, and she answered "yes" to both questions. The State immediately asked whether her opinion would change if she knew about the circumstances of the conviction which S.D. had testified about. Then the State asked whether she knew McDowell was convicted of sexually assaulting another child. McDowell immediately objected, and moved for a mistrial out of the hearing of the jury. The State expressed the view that McDowell had opened the door to rebuttal character evidence.[2] The district court ruled that by testifying that she trusted him around kids, Ms. Steele had effectively testified that McDowell has a character trait that he is not dangerous to children. It denied the motion for a mistrial and allowed the State to rebut that testimony in the manner provided by W.R.E. 404(a)(1) and W.R.E. 405(a).

[¶13] McDowell contends that the district court's ruling was an abuse of discretion because the State, not McDowell, first elicited Ms. Steele's opinion about McDowell's character. McDowell further contends Ms. Steele's testimony upon direct examination did not put his character in issue, but instead rebutted the State's W.R.E. 404(b) evidence.

---

[2] The admissibility of the misdemeanor convictions was vigorously contested before trial, and the district court did not rule on it in advance. The district court would not have abused its broad discretion under W.R.E. 104(a) if it had determined that McDowell had not presented character evidence. In circumstances like this it is helpful to the trial court for the proponent of problematic evidence to seek an advance ruling that the door has been opened before asking a potentially prejudicial question. *See, e.g.,* Steven Lubet, *Modern Trial Advocacy* at 236 (4th ed. 2009) ("To prevent prejudice to the moving party, many judges will instruct counsel to refrain from mentioning the subject evidence until the reserved motion can be ruled on. This will generally require the offering attorney to wait until she believes the foundation has been established and then approach the bench for a decision on the motion in limine.").

The State's position is essentially that the district court's ruling was correct. The State argues showing McDowell's good character was the only relevant purpose of Ms. Steele's testimony.

## *STANDARD OF REVIEW*

[¶14] Evidentiary rulings are reviewed for an abuse of discretion:

> Generally, decisions regarding the admissibility of evidence are entrusted to the sound discretion of the district court. We afford considerable deference to the district court's decision and, as long as a legitimate basis exists for the district court's ruling, it will not be reversed on appeal. Under the abuse of discretion standard, our primary consideration is the reasonableness of the district court's decision. The burden of establishing an abuse of discretion rests with the appellant.
>
> If we find that the district court erred in admitting the evidence, we must then determine whether or not the error affected [the appellant's] substantial rights, providing grounds for reversal, or whether the error was harmless. The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to [the appellant] if the error had never occurred. To demonstrate harmful error, [the appellant] must prove prejudice under circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

*Garner v. State*, 2011 WY 156, ¶ 9, 264 P.3d 811, 816-817 (Wyo. 2011) (quoting *Foster v. State*, 2010 WY 8, ¶ 4, 224 P.3d 1, 3–4 (Wyo. 2010) (quoting *Proffit v. State*, 2008 WY 103, ¶ 12, 191 P.3d 974, 977–978 (Wyo. 2008))).

[¶15] To the extent that McDowell's argument raises a constitutional due process issue, we review it *de novo*. *West v. State*, 2013 WY 128, ¶ 12, 311 P.3d 157, 160 (Wyo. 2013) (citing *Smith v. State*, 2009 WY 2, ¶ 35, 199 P.3d 1052, 1063 (Wyo. 2009); *Bush v. State*, 2008 WY 108, ¶ 58, 193 P.3d 203, 217 (Wyo. 2008); *Hannon v. State*, 2004 WY 8, ¶ 13, 84 P.3d 320, 328 (Wyo. 2004)).

## *DISCUSSION*

**Character Evidence under the Rules**

[¶16] Rule 404 of the Wyoming Rules of Evidence, the same in substance as Rule 404

of the Federal Rules of Evidence, generally prohibits any party from offering evidence that any person acted in conformity with his character, but allows a defendant in a criminal case to introduce evidence of his own character or the character of the alleged victim:

> (a) *Character evidence generally.* – Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion, except:
>
> > (1) Character of Accused. – Evidence of a pertinent trait of his character offered by an accused, or by the prosecution to rebut the same;
> >
> > (2) Character of Victim. – Evidence of a pertinent trait of character of the victim of the crime offered by an accused, or by the prosecution to rebut the same, or evidence of a character trait of peacefulness of the victim offered by the prosecution in a homicide case to rebut evidence that the victim was the first aggressor.

W.R.E. 404. Character evidence is relevant evidence, but is generally excluded. "The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." *Michelson v. United States*, 335 U.S. 469, 476, 69 S.Ct. 213, 218-219, 93 L.Ed. 168 (1948).[3] The traditional "mercy rule" exception in a criminal case permits a defendant to introduce character evidence as a "counterweight against the strong investigative and prosecutorial resources of the government." F.R.E. 404, 2006 Advisory Committee Notes (quoting C. Mueller & L. Kirkpatrick, *Evidence: Practice Under the Rules*, pp. 264-265 (2d ed. 1999)).

[¶17] Character evidence is generally "[e]vidence regarding someone's general personality traits or propensities, of a praiseworthy or blameworthy nature; evidence of a person's moral standing in a community." Black's Law Dictionary 636 (9th ed. 2009). Evidence of a propensity toward sexual deviation is character evidence. *Gruwell v. State*, 2011 WY 67, ¶ 31, 254 P.3d 223, 233 (Wyo. 2011). Rule 405 prescribes the form of character evidence presented by a defendant and rebuttal by the prosecution:

---

[3] *Michelson* was decided prior to the advent of the Federal Rules of Evidence. At common law, only reputation, not opinion, character evidence was allowed. *Michelson*, 335 U.S. at 477, 69 S.Ct. at 219. That aspect of *Michelson* was superseded by F.R.E. 405 and W.R.E. 405. *See United States v. Scholl*, 166 F.3d 964, 974 (9th Cir. 1999) and 2 Mueller & Kirkpatrick, *Federal Evidence* § 4:43 (4th ed. 2013).

(a) *Reputation or opinion.* – In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.* – In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, or is in issue under Rule 404(a)(2), proof may also be made of specific instances of his conduct.

W.R.E. 405. Thus, testimony that a defendant is not the type of person who would commit the charged offense may be rebutted by cross-examination whether the witness knows of prior crimes. *Taul v. State*, 862 P.2d 649, 654-655 (Wyo. 1993).

[¶18] So far there is no disagreement between the parties. The principal dispute is whether McDowell presented character evidence through the direct examination of Ms. Steele. McDowell relies on the principle that the "government may not turn [a percipient witness] into a character witness by asking him what kind of a man defendant was, and then use those questions to bootstrap into the case evidence of defendant's prior convictions which it was prohibited from using in its case-in-chief." *United States v. Gilliland*, 586 F.2d 1384, 1389 (10th Cir. 1978). In *Gilliland*, the defendant presented a witness, the defendant's stepson, who testified that he saw the defendant buy the car the defendant was alleged to have stolen. *Id*. at 1386. The witness did not express an opinion whether the defendant was the kind of person who would steal a car until the government asked that question on cross-examination. *Id*. Applying that principle to this case, then, the opinion of Ms. Steele **offered on cross-examination**, that McDowell was safe around children, does not open the door to rebuttal character evidence.

[¶19] Similarly, in *United States v. Crenshaw*, the defendant presented an alibi witness, the defendant's fiancée, who testified that the defendant was with her at all times relevant to the alleged shooting. *Id.*, 359 F.3d 977, 1002 (8th Cir. 2004). In *Crenshaw*, the government argued that the alibi testimony was effectively character evidence because it included a description of the defendant's interactions with his family which tended to show that he was a gentle, caring person. *Id*. The court characterized this as an incidental effect of the alibi testimony, and held accordingly that cross-examination on specific instances of character was beyond the scope of direct examination. *Id*. This holding is consistent with the general rule that a defendant may achieve an effect similar to character evidence by relating a personal history which suggests good character. *See* 22A Wright & Miller, *Federal Practice & Procedure Evidence* § 5236 (2d ed. 2013)

("To say that the issue of character is tendered whenever an inference of good character is possible is to simply destroy Rule 404 inasmuch as anytime the defendant denies he acted as charged, one may infer that he thinks his character if not good is at least better than it has been portrayed by the prosecution."); *see also McCormick on Evidence* § 191 n.23 (7th ed. 2013). Thus, it is clear that, for example, the evidence that McDowell served in the Coast Guard for 18 years suggests a law abiding character without opening the door to rebuttal character evidence.

[¶20] McDowell argues that in sum and substance Ms. Steele only testified that she had observed her children's interactions with him before he was a registered sex offender. McDowell essentially contends the State's cross-examination question whether McDowell was trustworthy with children was beyond the scope of Ms. Steele's testimony on direct examination. The State distinguishes *Crenshaw* and *Gilliland* in that in those cases the prosecution attempted to transform an occurrence witness into a character witness by asking cross-examination questions about incidental aspects of a witness's testimony on direct examination. Here, the State contends, Ms. Steele's testimony that McDowell was well behaved around her children when they were young had no possible relevant purpose other than to show that McDowell was generally trustworthy around children.

[¶21] The district court did not abuse its discretion in concluding that Ms. Steele's testimony included character evidence. The inference of good character created by Ms. Steele's testimony was not incidental because there was no other relevant purpose for most of her testimony.[4] In contrast, any inference of good character created by McDowell's brother's testimony that he observed McDowell around his children, including B.M. and A.M., and never saw any inappropriate behavior, was incidental to the primary purpose of his testimony, which was some evidence tending to disprove B.M.'s testimony about the charged offenses and A.M.'s testimony about the W.R.E. 404(b) evidence involving her.

[¶22] McDowell contends that if Ms. Steele's testimony was character evidence, then it was specific instances of conduct which were inadmissible on direct pursuant to W.R.E. 405. McDowell offers that the appropriate remedy for the prosecution, if he offered inadmissible evidence, was to object and exclude that evidence; the prosecution should not be allowed to sit mute, acquiescing to his error, in order to obtain the advantage of introducing rebuttal character evidence. He relies on a prominent learned treatise:

> What sorts of evidence of character will open the door to prosecution rebuttal under Rule 404(a)(1)? Rule 405 only

---

[4] Ms. Steele's testimony that she was present during the trip to Florida and did not witness the Florida W.R.E. 404(b) evidence was relevant to rebut that evidence.

8

permits the defendant to use opinions and reputation, but there can be inferences as to his character that arise from other types of proof. Suppose, for example, that the defendant offers a specific instance of his conduct that tends to prove his character. Such evidence might be admitted for some other purpose—e. g., to rebut prosecution evidence under Rule 404(b)—or it might come in because the prosecution failed to object. Similarly, a witness might give an opinion that is not directly concerned with the defendant's character but that would support an inference as to his character. Does such evidence give the prosecution the right to offer opinion and reputation evidence of the defendant's character?

The answer should be "no." If the evidence is admissible for some other purpose, the prosecution's remedy is a limiting instruction. If the evidence is inadmissible, the prosecution can object and have it excluded. Only where the defendant offers evidence of reputation or a direct opinion of his character should the prosecution be entitled to introduce opinion and reputation evidence of his bad character. To hold otherwise would be to permit all sorts of inadvertent openings of the door to character proof since almost any proof of the innocence of the defendant can contain some inference as to his character. This is not to say that the prosecution cannot rebut such circumstantial evidence of character with similar proof; only that the use of such proof does not entitle the government to offer evidence of character under Rule 404(a)(1).

22A Wright & Miller, § 5236 (footnotes omitted) (citing *contra Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003) (testimony of daughter that she had never seen her father with drugs was inadmissible character evidence but nonetheless "opened the door" to inquiry into specific instances on cross-examination)).  McDowell's argument in this regard has a certain appeal; this Court has recognized that "[e]vidence of a defendant's previous wrongdoing can have a powerful impact on the fact finder and that is the obvious reason prosecutors try so hard to introduce it.  That is also the reason why we must protect against its misuse." *Heywood* v. *State,* 2009 WY 70, ¶ 19, 208 P.3d 71, 76 (Wyo. 2009) (Kite, J., specially concurring).  The trial court could have, in the exercise of its sound discretion to control the presentation of evidence, limited the evidence in the way McDowell suggests. *See* W.R.E. 611; W.R.E. 403; *Grable v. State,* 649 P.2d 663, 673 (Wyo. 1982), *overruled on other grounds by Vlahos v. State,* 2003 WY 103, 75 P.3d 628 (Wyo. 2003).  This Court need not establish a uniform rule of law on this issue in order to decide this case because Ms. Steele's testimony is not so narrow.

Ms. Steele does, albeit colloquially, offer an opinion. She testified both that she did not "have any problem with" McDowell being around her children and that she did not "have any problems" when McDowell was around her children. "Have a problem with" can reasonably be interpreted as a colloquial way to express a negative opinion about a person or thing.

[¶23] Moreover, the expectation that questions or testimony about reputation or opinion as to character will use the terms reputation or opinion is unrealistic:

> *Specific acts.* Even though acts and broader patterns of behavior lie behind character, describing acts is not the same thing as giving character evidence, and an account of acts does not fit Rule 404(a)(1). On the other hand, broad generalizations summing behavior in a phrase should be allowed as an accommodation to ordinary conventions of human expression and language usage: Thus it should be perfectly acceptable, for instance, to prove that the defendant is peaceful or nonviolent by testimony that he "never hurt anybody during all the time I've known him," or to prove she is honest by means of testimony that she "always tells the truth," and to show his law-abiding character by proof that "As far as I know, he was never arrested or charged with a crime." A purist might argue that these phrases reflect acts and not traits, but it is pointless to require witnesses to conform their testimony to some ideal level of abstraction when phrases alluding in these broad ways to behavior are common currency in ordinary expression, and when they so obviously refer directly to character and effectively communicate the same meaning that the abstractions would express. Some rather wooden decisions, however, insist on a purist approach and unwisely reject such evidence.

1 Mueller & Kirkpatrick, *Federal Evidence* § 4:23 (4th ed. 2013) (footnotes omitted) (citing *Michelson*, 335 U.S. at 478, 69 S.Ct. at 219-220 (approving testimony that witness has "heard nothing against" defendant on assumption that "if no ill is reported," then reputation must be good)). The clear implication of Ms. Steele's testimony that she never had any problems with McDowell, in light of her testimony that he was the attentive, juvenile "fun uncle," is her opinion that he is trustworthy with children. Ms. Steele's testimony was supported by an adequate foundation, showing familiarity with and knowledge of McDowell over an extended time. 2 Mueller & Kirkpatrick, § 4:42. The district court did not abuse its discretion in determining that McDowell opened the door to rebuttal character evidence.

**Due Process**

[¶24] McDowell also argues that even if the rules of evidence permit the government to use specific instances of conduct to cross-examine Ms. Steele, the straightforward application of the rules to this situation is fundamentally unfair, violating the Due Process Clause of the Fourteenth Amendment. The prosecution was permitted to use W.R.E. 404(b) evidence to show intent, lack of accident or mistake, and a continuing course of conduct toward B.M.; the prosecution was also permitted to use W.R.E. 404(b) evidence to show motive, which in the context of a sexual abuse case means an unnatural sexual attraction to children. *See, e.g., Brown v. State*, 736 P.2d 1110, 1113 (Wyo. 1987), *superseded by statute on other grounds*, 1987 Wyo. Sess. Laws ch. 157, § 3, *as recognized in Jones v. State*, 771 P.2d 368, 370 (Wyo. 1989). McDowell argues that the only way to rebut such evidence is with evidence that he does not have an unnatural sexual attraction to children. But, he complains, he is placed in a difficult position if presenting evidence to rebut W.R.E. 404(b) evidence opens wide the door to allow the government to present more evidence of his bad character.

[¶25] McDowell's argument seems to be that being placed on the horns of such a dilemma infringes his due process or Sixth Amendment right to a meaningful opportunity to present a complete defense. *See Hannon*, ¶¶ 63-64, 84 P.3d at 347 (citing *Crane v. Kentucky,* 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)). A defendant is entitled to present "competent and reliable" evidence which is necessary to present a meaningful defense. *Hannon*, ¶ 63, 84 P.3d at 347. This right is limited by the "countervailing public interests" in the "integrity of the adversary process, which depends both on the presentation of reliable evidence and the rejection of unreliable evidence, the interest in the fair and efficient administration of justice, and the potential prejudice to the truth-determining function of the trial process." *Taylor v. Illinois,* 484 U.S. 400, 414-415, 108 S.Ct. 646, 656, 98 L.Ed.2d 798 (1988). Rules of evidence abridge the right to present a defense when they are "'arbitrary' or 'disproportionate to the purposes they are designed to serve,'" and the evidence "implicate[s] a sufficiently weighty interest of the [accused]." *United States v. Scheffer*, 523 U.S. 303, 308-309, 118 S.Ct. 1261, 1264-1265, 140 L.Ed.2d 413 (1998). The Supreme Court has recognized that the constitutional propriety of some rules of evidence, such as the rules regarding evidence of dishonest character, cannot seriously be disputed. *Nevada v. Jackson*, ____ U.S. ____, ____, 133 S.Ct. 1990, 1993, 186 L.Ed.2d 62 (2013).[5]

[¶26] It has long been recognized that the rules regarding character evidence engender difficult trial strategy decisions:

---

[5] The drafters of Rule 404 of the Federal Rules of Evidence suggested that Rule 404 is also "so deeply imbedded in our jurisprudence as to assume almost constitutional proportions and to override doubts of the basic relevancy of the evidence." F.R.E. 404(a), 1972 Advisory Committee Notes.

[T]he law extends helpful but illogical options to a defendant. Experience taught a necessity that they be counterweighted with equally illogical conditions to keep the advantage from becoming an unfair and unreasonable one. **The price a defendant must pay for attempting to prove his good name is to throw open the entire subject which the law has kept closed for his benefit and to make himself vulnerable where the law otherwise shields him.** The prosecution may pursue the inquiry with contradictory witnesses to show that damaging rumors, whether or not well-grounded, were afloat—for it is not the man that he is, but the name that he has which is put in issue. Another hazard is that his own witness is subject to cross-examination as to the contents and extent of the hearsay on which he bases his conclusions, and he may be required to disclose rumors and reports that are current even if they do not affect his own conclusion. It may test the sufficiency of his knowledge by asking what stories were circulating concerning events, such as one's arrest, about which people normally comment and speculate. Thus, while the law gives defendant the option to show as a fact that his reputation reflects a life and habit incompatible with commission of the offense charged, it subjects his proof to tests of credibility designed to prevent him from profiting by a mere parade of partisans.

*Michelson*, 335 U.S. at 478-479, 69 S.Ct. at 220 (emphasis added; footnotes omitted). Prosecutors and courts have become more enamored of Rule 404(b) evidence in the years since the United States Supreme Court spoke in *Michelson*, resulting in erosion of the protection from evidence of bad character provided by Rule 404. *See generally* 22A Wright & Miller, § 5240. Nevertheless, the admissibility of specific instances of conduct for limited purposes under Rule 404(b) is still substantially limited by the exacting analysis required by *Gleason*.

[¶27] Despite this difficult position, McDowell was not unable to respond to the government's W.R.E. 404(b) evidence. He had the opportunity to respond to B.M.'s testimony about extrinsic acts in Florida through the testimony of Ms. Steele and Ms. Lynch to the effect that those acts could not have occurred. To the extent that the W.R.E. 404(b) evidence showed intent or lack of accident or mistake, he had the opportunity to respond with the testimony of his brother and sister that their family was very touchy-feely and affectionate, and McDowell in particular was touchy-feely and playful, supporting his argument that the W.R.E. 404(b) testimony of B.M. and A.M., as well as the charged offenses, were misunderstood. None of that testimony opened the

door to character evidence.

[¶28]   More fundamentally, McDowell's belief that Ms. Steele's testimony that he was not inappropriate with her children rebuts the inference of a motive of unnatural sexual attraction toward children reflects an overbroad understanding of this Court's decisions. This Court has consistently held that "sexual behavior with a defendant's minor children, adopted children, or step-children is unusual sexual behavior permitting admission of uncharged misconduct evidence to prove motive when the accused denies that the charged conduct ever occurred." *Brower v. State*, 1 P.3d 1210, 1214 (Wyo. 2000); *Gleason*, ¶ 19, 57 P.3d 340-341 (collecting cases).   Generally this is because it is inherently difficult for ordinary jurors to conceive that a person would behave so bizarrely. *See Brown*, 736 P.2d at 1113 (citing *Elliott v. State*, Wyo., 600 P.2d 1044 (1979)).   But as the district court in this case recognized, once a jury's instinct that such conduct is inherently implausible is defeated by W.R.E. 404(b) evidence of a prior sex offense, additional instances of prior conduct have only minimal probative value.   Just as the inference of a motive of sexual deviancy is not much improved by merely showing more prior bad acts, it is not disproved by showing that on some occasions in the past a defendant has not misbehaved around children because no one would doubt that's possible.   McDowell hoped that Ms. Steele's testimony would rebut the inference of motive raised by the State's W.R.E. 404(b) evidence.   But the State's response, challenging her opinion with inquiry into specific instances of conduct, per W.R.E. 405(a), served its intended purpose: to discredit Ms. Steele's opinion about McDowell. That his evidence was rendered ineffective does not mean he was denied an opportunity to present a complete defense.

[¶29]   The Court cannot say that limitations of and framework for character evidence set out in Rule 404 and Rule 405 is so arbitrary or disproportionate to its purposes as to violate McDowell's constitutional right to present a defense.   As the United States Supreme Court persuasively explained:

> We concur in the general opinion of courts, textwriters and the profession that much of [character evidence] law is archaic, paradoxical and full of compromises and compensations by which an irrational advantage to one side is offset by a poorly reasoned counter[-]privilege to the other. But somehow it has proved a workable even if clumsy system when moderated by discretionary controls in the hands of a wise and strong trial court. To pull one misshapen stone out of the grotesque structure is more likely simply to upset its present balance between adverse interests than to establish a rational edifice.

*Michelson*, 335 U.S. at 486, 69 S.Ct. at 223-224.

13

## *CONCLUSION*

[¶30]  The district court did not abuse its discretion when it ruled that McDowell opened the door to character evidence under Rule 404(a)(1) and Rule 405(a), and the State's presentation of rebuttal character evidence did not violate his constitutional right to present a defense.

[¶31]  Affirmed.