NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0215n.06

Case Nos. 13-5772/5864

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Mar 17, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee/Cross-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CARL MOORE, | ) | TENNESSEE |
| | ) | |
| Defendant-Appellant/Cross-Appellee. | ) | |
| | ) | |
| | ) | |

Before: SILER, CLAY, and GIBBONS, Circuit Judges.

**SILER**, Circuit Judge.   This case concerns whether testimony about a defendant's religious habits constitutes character evidence and whether a procedurally defective state conviction may serve as a predicate felony for a federal felon-in-possession firearm conviction. A federal jury found Carl Moore guilty of (1) possessing a firearm as a convicted felon, 18 U.S.C. § 922(g)(1); (2) possessing with intent to distribute marijuana, 21 U.S.C. § 841(a)(1); and (3) possessing a firearm in furtherance of a drug trafficking offense, 18 U.S.C. § 924(c)(1)(A).   After trial, the district court acquitted Moore on the felon-in-possession count because it determined that Moore's predicate state felony conviction for aggravated burglary was void.   The government appeals this decision.   Moore also appeals, arguing that the district court erred when it held that his grandmother's testimony concerning his prayer habits constituted character evidence that opened the door to impeachment.   Moore also claims the district court

misinterpreted USSG § 4A1.2(a) and rendered a procedurally unreasonable sentence. For the following reasons, we **AFFIRM** the district court's evidentiary rulings, **REVERSE** its acquittal of the felon-in-possession charge, and **REMAND** for resentencing.

**I.**

In October 2011, Moore appeared in Tennessee criminal court to plead guilty to aggravated burglary, a Class C felony, in addition to three misdemeanors. *See* Tenn. Code Ann. 39-14-403. The parties had negotiated a three-year sentence: eleven months and 29 days imprisonment (with credit for time served in custody), followed by supervised probation. At the plea colloquy, the state court described the nature of the charges, the factual basis for those charges, the bargained-for sentences, and the legal rights Moore was relinquishing by pleading guilty. The state court specifically warned Moore that his convictions could be used to increase his punishment for future offenses. Moore said he understood the court's explanations.

The state court "accept[ed] [Moore's] pleas," explicitly found him guilty of the misdemeanor charges, and announced the sentence for those charges—they were to be served concurrently with each other and consecutive to the aggravated burglary charge. But the court did not explicitly pronounce Moore guilty of the aggravated burglary charge or announce the sentence for that charge. Furthermore, although the court's written judgment acknowledged that Moore had been indicted for aggravated burglary, a Class C felony, it mistakenly labeled the offense of conviction as a Class C misdemeanor. The state court later amended its judgment to reflect that Moore had, in fact, been convicted of the same Class C felony with which he had been charged.

In December 2011, two Chattanooga police officers stopped a car Moore was driving and noticed a handgun under the driver's seat. Moore fled on foot, dropped a baggie that contained

marijuana, and then surrendered. This incident led to federal charges that culminated in the jury trial that underlies this opinion.

Before trial, Moore moved to dismiss the indictment for being a felon in possession of a firearm on the ground that the predicate conviction—his October 2011 Tennessee aggravated burglary conviction—was void because he had never been properly adjudicated guilty or sentenced. The district court deferred its ruling until after trial.

Next, in August 2012, Moore filed a speedy trial motion in state court claiming that the state court had not yet accepted his guilty plea to aggravated burglary, found him guilty, or properly sentenced him. The state court denied the motion, and characterized its failure to announce the sentence as "inadvertence." The court explained that its adoption of the written plea agreement, including its undisputed terms, was implicit in the court's acceptance of the pleas. The court also issued a corrected judgment that specified his conviction was for a felony.

At Moore's federal trial for drug and firearm offenses, defense counsel called Moore's grandmother as a witness. She testified that Moore lived with her in December 2011. She testified she had never seen Moore with a gun. She said she disliked guns, and her motto was "God is my gun." In response to a question about what happened the day Moore was arrested, his grandmother said a female friend was visiting, and that she and Moore left to take the friend home. She said that before they left, she and Moore prayed together, because they "always pray" before they leave the house and before he gets out of the car. On cross-examination, the prosecutor asked Moore's grandmother whether she had raised him from infancy. She replied that she had "raised him in church," and said she had taught him about guns and taught him to do right. She said she believed Moore respected her and followed her teachings.

The government then obtained the court's permission to impeach the grandmother's testimony under the theory that her description of Moore's Christian upbringing constituted character evidence that opened the door to evidence of his prior bad acts. The government asked Moore's grandmother if she knew he had been convicted of crimes. She initially said, "what crime," and reiterated that she had taught Moore "what was right and what was wrong." When the government asked her if she knew Moore was convicted of "carrying a weapon in 2005," defense counsel objected. The district court held a hearing outside the presence of the jury, and ultimately overruled the objection:

> Well, her testimony strayed into character evidence. She testified that they prayed . . . . I think she said every time he would leave the house they would . . . pray, and that she taught him right from wrong . . . . And I think the reasonable implication from that is that he's a good person, he's a law-abiding person. That is character evidence.
>
> . . . .
>
> So to the extent that the government has a basis to ask questions regarding incidents in the defendant's life that this witness would have known about that would contradict her implication that the defendant is a person of good character, I think it's permitted by the rules.

After the jury returned, the government asked the grandmother whether she had heard about Moore's prior convictions for possessing a weapon, possessing drugs, committing aggravated burglary, and resisting arrest. The grandmother admitted that she had heard of some prior convictions and that he had been involved with a gang. But on redirect she claimed Moore's behavior had improved: he "went to church" with her, prayed with her, and stayed home or spent time with his girlfriend rather than "run the street," like he used to do.

Moore also testified and briefly described the facts underlying two prior weapons charges to which he had pleaded guilty. The district court ultimately gave the jury a limiting instruction on the proper use of the prior acts evidence, and the jury found Moore guilty on all three counts.

After trial, the district court granted Moore's motion for a judgment of acquittal concerning the § 922(g)(1) predicate conviction. First, the court found the state court's judgment inconsistent with the transcript of the plea colloquy, and relied on the transcript. The court ruled that, based on the transcript, the state court had failed to adjudicate Moore guilty of aggravated burglary or orally impose the sentence in his presence, as required by the Tennessee Rules of Criminal Procedure. The district court concluded that the state court's error meant that Moore was not "convicted." The court then sentenced Moore to 70 months' imprisonment on the remaining two counts.

## II.

We review challenges to a district court's evidentiary rulings under the abuse-of-discretion standard. *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003). Determining whether testimony constitutes character evidence depends on "numerous and subtle considerations, difficult to detect or appraise from a cold record," so "rarely and only on [a] clear showing of prejudicial abuse of discretion" do we reverse trial courts on this subject. *Michelson v. United States*, 335 U.S. 469, 480 (1948).

On an appeal from a post-verdict judgment of acquittal under Rule 29, we must determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *United States v. Baggett*, 251 F.3d 1087, 1095 (6th Cir. 2001).

## III.

Moore argues that his grandmother's testimony did not include character evidence, so the district court erred by authorizing impeachment evidence. Under Fed. R. Evid. 404(a)(2)(A), "a defendant may offer evidence of the defendant's pertinent [character] trait, and if the evidence is

admitted, the prosecutor may offer evidence to rebut it." Moore claims that habitual prayer is not a character trait or something that would imply he is a law-abiding citizen. He cites *Mein Kampf* for the proposition that "almost everybody prays," even "very bad people," including Adolf Hitler.

People commonly perceive a person's demonstrable routine of religious activity—such as daily prayer or regular church attendance—to be evidence of the person's good moral character and law-abiding tendencies. *See, e.g.*, *Franklin v. Lynaugh*, 487 U.S. 164, 186 (1988) (acknowledging that "religious devotion" reveals "positive character traits"); *United States v. Thompson*, 130 F.3d 676, 682 n.4 (5th Cir. 1997) (describing testimony by family members that a defendant was "a good man" and "went to church" as character evidence); *see also* 28 C. Wright, V. Gold, & M. Graham, FEDERAL PRACTICE & PROCEDURE § 6152, at 309-10 (1993) (noting, in a different context, that "many people presume a strong connection between religious belief and moral character").

In this respect, we think this case is comparable to *McDowell v. State*, 318 P.3d 352 (Wyo. 2014). In that recent child sex abuse case, a defense witness described the defendant's interactions with her children and explained that she had no problem with McDowell and the children being together. The Wyoming Supreme Court held that this factual testimony was character evidence. The factual testimony created an "inference of good character" which was not merely "incidental" because "there was no other relevant purpose" for much of that testimony. 318 P.3d at 358. The court quoted a prominent evidence treatise to explain that although describing a person's acts is not necessarily the same thing as giving character evidence, "broad generalizations" that summarize a person's behavior can equate to character evidence:

> Thus it should be perfectly acceptable, for instance, to prove that the defendant is peaceful or nonviolent by testimony that he "never hurt anybody during all the time I've known him," or to prove she is honest by means of testimony that she "always tells the truth," and to show his law-abiding character by proof that "As far as I know, he was never arrested or charged with a crime." A purist might argue that these phrases reflect acts and not traits, but it is pointless to require witnesses to conform their testimony to some ideal level of abstraction when phrases alluding in these broad ways to behavior are common currency in ordinary expression, and when they so obviously refer directly to character and effectively communicate the same meaning that the abstractions would express.

*Id.* at 359-60 (quoting 1 Mueller & Kirkpatrick, Federal Evidence § 4:23 (4th ed. 2013)).

Because (1) a witness can imply that a defendant has good character by describing the defendant's activities, and because (2) routine religious activity is perceived as a positive character trait, it was not an abuse of discretion for the trial court to conclude that when the grandmother described Moore's religious upbringing and prayer habits, she intended to suggest that Moore had a law-abiding character. Although Moore called his grandmother as a fact witness to provide background information on the day of his arrest, the district court reasonably determined that she "went much further" than that and "strayed into character evidence."

Even if the district court erred when it classified the grandmother's testimony as character evidence or when it permitted impeachment using Moore's prior bad acts, the error would have been harmless. Because Moore was charged with being a felon in possession of a firearm, the jury knew of his prior difficulty with the law. Given these facts, Moore's decision to testify can hardly be seen as a response to the cross-examination of his grandmother. In any event, the test for non-constitutional harmless error is whether the verdict was "substantially swayed by the error," *United States v. Hardy*, 643 F.3d 143, 153 (6th Cir. 2011) (internal quotation marks omitted), not whether Moore would have declined to testify had the evidence been excluded.

In assessing whether this harmless error test was met, we observe that the court instructed the jury that the evidence could be considered only as evidence of the grandmother's credibility. And, given the other evidence of Moore's prior difficulties with the law, it seems highly unlikely that the evidence of the grandmother's awareness of prior criminal activity had any effect on the jury's decision.

**IV.**

The next question is whether the district court correctly granted Moore a judgment of acquittal for his felon-in-possession charge on the basis that the predicate felony conviction was void under Tennessee law. Under the federal statute in question, 18 U.S.C. § 922(g)(1), it is unlawful for any person "who has been convicted" of "a crime punishable by imprisonment for a term exceeding one year" to possess "any firearm or ammunition."

To determine what constitutes a conviction for purposes of 18 U.S.C. § 922(g), we must consult the law of the state in which the conviction occurred. *United States v. Penney*, 576 F.3d 297, 303 (6th Cir. 2009). Tennessee Rule of Criminal Procedure 32 describes the procedure for sentencing a defendant in Tennessee. "After a verdict or plea of guilty, the court shall set the sentence." Tenn. R. Crim. P. 32(b). Then, a "judgment of conviction shall be signed by the judge and entered by the clerk." Tenn. R. Crim. P. 32(e)(1). Under Rule 32(e)(2), "[a] judgment of conviction shall include: (A) the plea; (B) the verdict or findings; and (C) the adjudication and sentence." Rule 43(a)(3) also establishes that a defendant "shall be present at . . . the imposition of sentence."

Moore's sentence contained two irregularities. First, there was a clerical error on the judgment form. Second, the court failed to pronounce him guilty of the predicate felony or announce the sentence in his presence.

First, the original judgment of conviction contained an error. Although Moore pleaded guilty to a Class C felony, one check-box on the judgment form indicated that his sentence was for a Class C misdemeanor. Moore's multi-year sentence could not possibly be a legal sentence for a misdemeanor. But such errors can be easily corrected by Tennessee trial courts. Under state rules:

> Either the defendant or the state may, at any time, seek the correction of an illegal sentence by filing a motion to correct an illegal sentence in the trial court in which the judgment of conviction was entered. For purposes of this rule, an illegal sentence is one that is not authorized by the applicable statutes or that directly contravenes an applicable statute.
>
> . . . .
>
> If the illegal sentence was entered pursuant to a plea agreement, the court shall determine whether the illegal provision was a material component of the plea agreement. . . . [I]f the court finds that the illegal provision was not a material component of the plea agreement, then the court shall enter an amended uniform judgment document setting forth the correct sentence.

Tenn. R. Crim. P. 36.1(a), (b)(3)–(4); *see also Cantrell v. Easterling*, 346 S.W.3d 445, 453 (Tenn. 2011) ("[A] trial court has the authority to correct an illegal sentence at any time.").

The state court corrected Moore's October 2011 judgment in July 2012. Under these circumstances, we conclude that the now-corrected error on Moore's judgment of conviction does not negate his predicate conviction. *See Maldonado v. State*, No. W2012-00808-CCA-MR-3H, 2013 WL 654173, at *2 (Tenn. Crim. App. Feb. 19, 2013) (explaining that clerical errors have "no effect on the validity" of a conviction or sentence).

Second, the district court believed Moore's predicate conviction was void because, although he was present at the plea colloquy where his sentence was discussed, Moore did not personally hear the court pronounce a judgment or sentence on that charge. We disagree with this conclusion.

After Moore was indicted on the federal charges, he filed a motion for a speedy sentencing hearing in state court. That motion was premised on the fact that the trial court, in ostensibly accepting his guilty plea, failed to pronounce him guilty of the aggravated burglary charge or announce his sentence under that charge.

In its order denying Moore's motion, the state court found that while it "did explicitly accept all his pleas," it "did not explicitly find him guilty or sentence him" for the aggravated burglary charge. The court found that its "failure at the plea hearing to pronounce [Moore's] guilt and sentence was an inadvertence" that did not necessitate reopening the case under speedy trial rules. Instead, the court reasoned that when it explicitly accepted Moore's plea bargain, it implicitly found him guilty of aggravated burglary and implicitly adopted the undisputed sentencing terms contained in the plea agreement—a sentence that Moore served. In fact, Moore remained on supervised probation for the aggravated burglary conviction at the time of his arrest in this case.

Furthermore, recent Tennessee case law suggests that a violation of the right to be present at sentencing renders the judgment merely "voidable, not void." *Bennett v. Lewis*, No. E2006-01592-CCA-R3-HC, 2007 WL 416376, at *2 (Tenn. Ct. App. Jan. 30, 2007) ("[W]hether the trial court followed the proper statutory procedure in conducting the sentencing hearing . . . is not an issue that would render the judgment void."), *appeal denied* (Tenn. June 18, 2007); *see also Taylor v. State*, 995 S.W.2d 78, 83-84 (Tenn. 1999) (distinguishing voidable judgments, which are facially valid, from void judgments, which demonstrate from the face of the judgment that the court lacked authority to render judgment).

We are aware that in *State v. Hill*, 987 S.W.2d 867, 871 n.4 (Tenn. Crim. App. 1998), a Tennessee appellate court found that the absence of the defendant at his sentencing hearing

divested the sentencing court of jurisdiction. In this case, however, Moore was present at the plea colloquy where his sentence was discussed and where the trial court explicitly accepted his plea agreement, which contained his bargained-for sentence. This situation is not analogous to *Hill*, where the defendant was unable to hear or challenge the law and facts underlying his sentence.

Nor does the law require courts to use "talismanic language" in guilty plea proceedings. *Lane v. State*, 316 S.W.3d 555, 566 (Tenn. 2010) (quoting *Stewart v. Peters*, 958 F.2d 1379, 1384 (7th Cir. 1992)). Moore knew he was pleading guilty and he knew the terms of his bargained-for sentence. The trial court's failure to pronounce the words, "I find you guilty," or to announce the specific sentence in Moore's presence do not render his conviction a nullity for purposes of a federal firearm disability.

Moore also challenges the district court's use of his aggravated burglary conviction as a "prior sentence" under section 4A1.2 of the Sentencing Guidelines. Our decision to recognize the validity of that conviction renders his argument moot.

**V.**

We **AFFIRM** Moore's convictions under 18 U.S.C. §§ 841(a)(1) and 924(c)(1)(A), but we **REVERSE** the district court's judgment of acquittal on the § 922(g)(1) felon-in-possession charge and **REMAND** for resentencing on all three charges.